In the

# United States Court of Appeals
## For the Seventh Circuit

No. 10-1072

BRIAN D. GRIGSBY,

*Plaintiff-Appellant,*

*v.*

RAY LAHOOD, Secretary
of the United States Department
of Transportation,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:07-cv-01649—**Richard L. Young**, *Chief Judge.*

ARGUED SEPTEMBER 17, 2010—DECIDED DECEMBER 6, 2010

Before POSNER, KANNE, and WOOD, *Circuit Judges.*

KANNE, *Circuit Judge.* After discovering that his job as
an Air Traffic Controller at one of the Federal Aviation
Administration's (FAA's) automated service stations
was set to be eliminated in a reduction in force, Brian
Grigsby applied for several vacant positions with the
FAA at its Indianapolis Center. The FAA's Human Re-

sources department conducted a cursory review of Grigsby's application and rated him as qualified for each post. Grigsby was then interviewed, but was not selected for any of the vacancies by the hiring official. Grigsby subsequently brought an employment discrimination suit against the Secretary of the United States Department of Transportation, claiming that the FAA failed to select him due to his Native American heritage. The district court granted summary judgment in favor of the Department of Transportation, holding that Grigsby failed to establish a prima facie case of discrimination and did not offer sufficient evidence to proceed under a mixed-motive theory. Because Grigsby was not qualified for each of the four positions, we affirm.

## I. BACKGROUND

Grigsby began employment with the FAA in January 1991, initially hired as part of a co-op learning program where he worked in various posts while finishing his aviation degree. In 1993, after completing his degree and attending the Air Route Traffic Control Academy, Grigsby was posted as a developmental Air Traffic Controller at the Indianapolis Center, an en route facility responsible for directing air traffic throughout a large section of airspace centered around Indianapolis, Indiana. As a developmental controller, Grigsby was to undergo training with the goal of becoming a Certified Professional Controller at the Indianapolis Center. That certification would permit him to operate

the radar screens at the Indianapolis Center without active supervision.

Grigsby's training began uneventfully. He was first trained and certified as a radar associate on all seven radar stations, where he served as another set of eyes for the controllers and familiarized himself with the radar equipment. Grigsby then began radar controller training, where he learned how to independently operate the radar stations that monitored various sectors of Indianapolis airspace. Grigsby finished training for two of the radar sectors. Throughout this period, Grigsby also worked in the Indianapolis Tower, where he became certified in arrival data, flight data, and clearance delivery.

In the midst of his training, Grigsby became aware of his Native American heritage. He educated himself about his Sioux, Cherokee, and Apache roots and began to share his background with his coworkers. Grigsby claims that this led to a number of hostile comments from his coworkers, who began to call him "Chief," "Running Planes Together," and "Metal Rain," among other insults. While Grigsby did not file a complaint regarding these comments, he did request a transfer to another facility, ostensibly to escape this abuse. The FAA agreed to transfer him to an automated service station in Terre Haute, Indiana. Grigsby withdrew from training at the Indianapolis Center, completed the separate training necessary to work at an automated station, and began work in Terre Haute in 1997. Grigsby worked at the Terre Haute facility from 1997 until 2005,

attaining Full Performance Level certification at that location along the way.

Between 2003 and 2005, the FAA began a series of changes, both technological and administrative. First, the Indianapolis Center underwent a significant over-haul: its radar system was upgraded, the operational equipment in the Center was modernized, and operational procedures were adjusted to accommodate these changes. All radar controllers and managers received classroom and simulation training related to the modernization. Second, in 2005, the FAA privatized its automated flight service centers, including the Terre Haute facility. This privatization led to a reduction in force for staff members employed at those locations, and Grigsby's job was set to be eliminated.

Shortly after finding out about the reduction in force, Grigsby learned of a number of open positions at the Indianapolis Center. The vacancies were for one temporary Operations Supervisor, five permanent Operations Supervisors, nine Traffic Management Coordinators, and three Support Specialists. Each qualified as a promotion for Grigsby. For all of the vacancies, the FAA's Human Resources department posted a set of minimum qualifications, conducted a cursory review of the applications to determine whether the applicants were qualified, and tendered the applications to the hiring official at the Indianapolis Center for review. Grigsby applied for each category of open positions, was rated as qualified by Human Resources, and was interviewed.

Before hearing back about the decisions, Grigsby had multiple meetings with Kathryn Hughes, the Assistant Air Traffic Manager at the Indianapolis Center. At each discussion, Grigsby spoke with her about his ongoing interest in the vacancies at the Indianapolis Center and his general desire to relocate to the Indianapolis area. During their last discussion, Grigsby also told Hughes that he was Native American. Grigsby claims Hughes bristled at this statement and abruptly ended their meeting.

Grigsby later received word that he was not selected for any of the positions. To come to his hiring decisions, David Boone, the Air Traffic Manager at the Indianapolis Center, discussed the matter with Hughes and other senior staff and independently reviewed the credentials of each applicant. Boone hired no one for the temporary Operations Supervisor position, leaving the post unfilled. For the remaining positions, Boone selected candidates who were already Certified Professional Controllers and were familiar with the technology in place at the Indianapolis Center. While Grigsby had obtained Full Performance Level certification at the Terre Haute Center, he was not a Certified Professional Controller.

Believing that the FAA had failed to select him on account of his Native American origin, Grigsby brought a discrimination claim under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, against the Department of Transportation in the United States District Court for the Southern District of Indiana. The district court granted the Department of Transportation's motion for

summary judgment, holding that Grigsby failed to show that the hiring official was aware of his Native American origin, that he did not meet his burden to establish a prima facie case, and that he did not offer sufficient evidence to infer discrimination under a mixed-motive theory. Grigsby timely appealed.

## II. ANALYSIS

The only issue before us is whether the district court erred in granting summary judgment in favor of the Department of Transportation. We review a grant of summary judgment *de novo*, viewing the record in the light most favorable to the non-moving party and taking all reasonable inferences in that party's favor. *Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 456 (7th Cir. 2010).

To establish discrimination sufficient to survive a motion for summary judgment, a plaintiff may proceed under the direct or indirect method of proof. *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009). If a plaintiff has failed to show that the sole motive for a personnel action was discriminatory under either method, he can still proceed past summary judgment under a mixed-motive theory if he can offer direct or circumstantial evidence showing that illegal discrimination played some role in the employer's decisionmaking. *Abioye v. Sundstrand Corp.*, 164 F.3d 364, 369 (7th Cir. 1998). Because Grigsby's brief is unclear as to which approach he employs, we will evaluate each in turn.

*A. Direct Method*

A careful review of the record shows that Grigsby is unable to proceed under the direct method of proof. To proceed under that method, a plaintiff must offer either direct evidence that acknowledges discriminatory animus on the part of the employer or circumstantial evidence which establishes discriminatory motive through a longer chain of inferences. *Mach v. Will County Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009). Grigsby's only proffer under this method is his claim that Hughes, the Assistant Air Traffic Manager at the Indianapolis Center, changed her demeanor and ended their discussion when he stated that he was Native American. Even read in the light most favorable to Griggs, this circumstantial evidence misses the mark, as it does not "point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003). As we have held elsewhere, unfriendly glances and other subtle indicia of distaste generally fall short of establishing discrimination under this method of proof. *See, e.g.*, *Dear v. Shinseki*, 578 F.3d 605, 609 (7th Cir. 2009); *Pafford v. Herman*, 148 F.3d 658, 666 (7th Cir. 1998).

*B. Indirect Method*

Because Grigsby cannot proceed under the direct method, he is left with the indirect method of proof and its "barnacle-laden" burden-shifting framework. *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 845 (7th Cir.

2007). To move past summary judgment under that framework, a plaintiff must first establish a prima facie case by showing that he is a member of a protected class, he applied for and was qualified for an open position, he was rejected for the position, and the position was filled with a person not in the protected class who had similar or lesser qualifications than the plaintiff. *Jackson v. City of Chicago*, 552 F.3d 619, 622 (7th Cir. 2009). If a plaintiff satisfies that burden, an inference of discrimination arises, an inference that can be dispelled if the employer offers a non-discriminatory, legitimate reason for the personnel action. *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010). If the employer offers such a reason, the plaintiff must then show that the proffered reason is actually a pretext for illegal discrimination. *Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 666 (7th Cir. 2007).

The district court held that Grigsby failed to establish a prima facie case, as he was not qualified for the vacant positions and was not more qualified than the applicants selected. Even assuming that Grigsby made out a prima facie case, the district court also concluded that Grigsby did not show that the legitimate reason offered by the FAA for its decision was pretext. Grigsby claims that the district court erred, asserting that he was qualified because he appeared on the initial list of qualified applicants put forth by the FAA's Human Resources department. Because full certification was not listed on the job postings, Grigsby argues that he should not have to show it as part of his prima facie case

and that any purported reliance on it by the FAA is a pretext for illegal discrimination.

We agree with the district court that Grigsby was not qualified for the vacant positions and, as such, his prima facie case fails. *Pafford*, 148 F.3d at 670. We can dispense first with Grigsby's claim that he was qualified for the Support Specialist post. The vacancy announcement for this position required the employee to maintain operational currency at the Indianapolis Center, which meant that the employee would need to independently serve as an Air Traffic Controller for at least eight hours per month. In turn, to work as a controller without supervision, the employee would need to be a Certified Professional Controller at the Indianapolis Center, a certification that Grigsby lacked.

Grigsby argues that his Full Performance Level certification is the same as Certified Professional Controller status, and thus he was qualified for the Indianapolis Center positions. Construing the facts in the light most favorable to Grigsby, we may assume that the two titles convey roughly the same information. It remains true, however, that Grigsby's duties at Terre Haute were different in several respects from those at the Indianapolis Center, and his certification at Terre Haute did not qualify him to work as a controller at the Indianapolis Center without supervision. To do so, he would have to restart his Indianapolis Center training, an endeavor that would require some time to complete.

Grigsby was similarly unqualified for the Traffic Manager Coordinator and Operations Supervisor posts. While

the vacancy announcements for those positions did not facially require that applicants maintain operational currency at the Indianapolis Center, FAA directives did impose that requirement on all Coordinators and Operations Supervisors. As such, for the same reasons discussed above, any hire would need to be fully certified at the Indianapolis Center, making Grigsby functionally unqualified for both posts.

Even if we were to assume that Grigsby was qualified, his prima facie case still fails because he cannot show that the positions were filled by applicants who had similar or lesser qualifications than him. *See Hobbs v. City of Chicago*, 573 F.3d 454, 460-61 (7th Cir. 2009). First, all of the successful applicants for the vacant positions were Certified Professional Controllers and, unlike Grigsby, could maintain operational currency at the Indianapolis Center without undergoing significant additional training. Second, all of the successful applicants were already familiar with the technology and automation in place at the Indianapolis Center. By contrast, Grigsby lacked experience with the new technology placed at the Center since his 1997 departure from that facility.

Assuming for the purposes of argument that Grigsby has established a prima facie case, he cannot show that the FAA's legitimate reason for failing to select him was a pretext for discrimination. The FAA asserts that it did not select Grigsby because he could not maintain operational currency at the Indianapolis Center at the start of his employment and because he lacked

familiarity with the Center's upgraded technology. Once the FAA offered a legitimate reason for its personnel decision, the burden shifted back to Grigsby to show, by a preponderance of the evidence, that the proffered reason was pretextual. *Sartor v. Spherion Corp.*, 388 F.3d 275, 279 (7th Cir. 2004). To meet his burden, Grigsby claims that the FAA has given conflicting reasons for failing to select him in favor of other candidates. This claim is unsupported by the record, which shows that the FAA has consistently told Grigsby that he was not selected due to a lack of certification and experience at the Indianapolis Center. Grigsby also recites a number of reasons why he was qualified for the vacant postings, but this is also insufficient to satisfy his burden, as it does not establish that the FAA's articulated rationale was a lie designed to conceal true discriminatory animus. *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 754-55 (7th Cir. 2006).

We note that this is not a case where an employer imposed an additional qualification on applicants after applications were already tendered and then used that qualification to justify not selecting a candidate. In those cases, some of our sister circuits have held that an employer's claimed reliance on an additional, unstated qualification could raise suspicions about discriminatory intent that preclude summary judgment in favor of the employer. *See Bergene v. Salt River Project Agric. Improvement and Power Dist.*, 272 F.3d 1136, 1143 (9th Cir. 2001); *Williams v. Nashville Network*, 132 F.3d 1123, 1132-33 (6th Cir. 1997) (per curiam). In each of these cases, however, the additional requirement was

neither stated on the face of the vacancy announcement nor affirmatively required by law or directive. That is not the case here—for each of the vacant posts, either FAA directives or the vacancy announcement required that the applicant maintain operational currency at the Indianapolis Center, and this requirement was a "central and legitimate hiring consideration" for the open posts. *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 926 (5th Cir. 2010).

### C. Mixed Motive

Grigsby's final claim is that, even if the FAA relied on legitimate reasons for not hiring him, his race and national origin also entered into the calculus, leaving him free to proceed under a mixed-motive theory of liability. To put forth a mixed-motive claim, Grigsby must nevertheless come forth with direct or circumstantial evidence of discrimination. *Abioye*, 164 F.3d at 369. As we have already noted, Grigsby lacks direct or circumstantial evidence of discrimination, so his mixed-motive claim fails for this reason alone. Even if he did have that evidence, an employer can avoid a finding of liability by showing that it would have made the same decision even if it had not allowed race or national origin to enter into the decisionmaking process. *Hossack v. Floor Covering Assoc. of Joliet, Inc.*, 492 F.3d 853, 860 (7th Cir. 2007). There is ample evidence in the record showing that the FAA made its decision to hire other applicants based on their superior certifications and familiarity with the Indianapolis Center and that it

would not have selected Grigsby because he lacked this expertise. As such, summary judgment in favor of the FAA was appropriate.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.