**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 8, 2011[*]
Decided March 16, 2011

*Before*

RICHARD A. POSNER, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 09-3196

| | |
|---|---|
| AARON MAY, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Northern District of Illinois, |
| | Western Division. |
|     *v.* | |
| | No. 06 C 50119 |
| VICTOR TRANCOSO, et al. | |
|     *Defendants-Appellees*. | Frederick J. Kapala, |
| | *Judge*. |

**O R D E R**

Aaron May, an inmate at Dixon Correctional Center serving a 50-year sentence for murder and a 15-year sentence for aggravated kidnaping, appeals the district court's judgment in his suit under 42 U.S.C. § 1983. He maintains that prison officials violated his constitutional rights by strip searching him in front of female visitors, retaliating against him for protesting the search, subjecting him to a degrading drug test, and deliberately ignoring his shoulder injury. Because May provided sufficient evidence to show that guards

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

strip searched him to humiliate him, we vacate the grant of summary judgment on his claim that the search violated the Eighth Amendment. We affirm the court's judgment on the rest of his claims.

## I. Background

For purposes of this review, we construe the record evidence in May's favor. *See Grigsby v. LaHood*, 628 F.3d 354, 358 (7th Cir. 2010). During a non-emergency training drill in June 2004, a team of correctional officers strip searched May twice. The first search, which he does not seriously challenge on appeal, occurred when the officers inspected May's housing unit. As part of the drill, officers strip searched May in his cell in front of his cellmate and a female officer, threatening him with segregation if he did not comply. After he complied with the search, Officer Matthew Goken handcuffed May behind his back, prompting May to complain about pain in his shoulder from an unhealed injury.

While cuffed, guards walked May to another building for drug testing. He told Officer Goken that he couldn't provide a urine sample because he was "holding a bowel movement" and asked to use a toilet. Goken allowed him to use a toilet, but explained that he had to observe May provide the sample. Goken watched as May, now uncuffed, had a bowel movement and gave a urine sample. Goken ridiculed him, May says, as urine splashed on his hands and clothing while urinating.

About an hour later Officer Goken led a second strip search of 50 prisoners, including May, in a common area. This time, May says, Goken allowed three civilian female teachers, at least three female prison staff, including superintendent Mary Henry, and a male teacher to watch the search. Prison officials David Sambdman, Jerry Sterns, Victor Trancoso, and Jesse Montgomery also watched. During the search, officers belittled the prisoners by making crude comments about their naked bodies, and some of the women were "smiling and pointing or laughing or something." When May protested and asked to be searched in a nearby closet, officers forced him to stand in the middle of the room while the officers watched him lift his testicles, bend over, and spread his buttocks. The officers again threatened him with segregation if he resisted further.

May remained handcuffed for three hours during and after this second search. When May complained of the lingering shoulder pain, Officer Goken ordered him to sit down, and he fell backwards, hit the floor, and injured his shoulder, lower back, and wrist. He also asked to urinate and was ignored, so he urinated on himself. When returned to his cell, he found that some of his personal items were missing or broken.

May filed two grievances. The first sought money for the missing and broken items,

and was denied. The second complained about the prison officials' conduct during the inspection, including the strip search, the injury to his shoulder, and his drug test. An officer denied this grievance, the warden concurred, and May appealed to the Administrative Review Board. The Board initially dismissed the appeal as untimely, but later corrected itself and denied the appeal on the merits, determining that the officials had followed standard procedure during the inspection. The Director of the Illinois Department of Corrections concurred.

May then sued in the district court, asserting, as relevant here, that the officers violated his rights by (1) strip searching him the second time in order to humiliate him, (2) retaliating against him during the second strip search for his protests by singling him out in the middle of the room, (3) damaging his shoulder with deliberate indifference by cuffing him in back, and (4) subjecting him to an "intentionally invasive and degrading drug-test." The district court dismissed May's claim regarding his shoulder because handcuffing May did not present a substantial risk of serious harm. The court also dismissed as defendants, from all the claims, the prison director and warden because they were not personally involved in the inspection, only in handling his grievances.

Later, the district court considered the defendants' motion for summary judgment on the rest of May's claims. The state countered May's sworn statements about the strip search with affidavits from the teachers who denied seeing any prisoners strip searched. May supported his story, however, with affidavits from six fellow prisoners who agreed that at least one female civilian watched the strip search, along with female prison staff. The court recognized that this created a dispute of fact on the strip-search claim, but determined that, even if women watched, May's claim failed because this and other evidence did not suggest that the officers intended to humiliate him. The court also found that the drug test did not constitute cruel and unusual punishment because the test had a legitimate penological justification. And finally, the court ruled against May's retaliation claim, finding that May's second search was no more invasive than the searches of the other inmates and that any additional humiliation that he experienced by being singled out in the middle of the room was not enough to deter a reasonable prisoner from engaging in protected activity.

## II. Discussion

Before we reach the merits of May's appeal, we address three threshold issues raised by the state. First, the state suggests that we should order May to attest under Federal Rule of Appellate Procedure 4(c)(1) to the timeliness of his motion to extend time to file this appeal. But we need not. The envelope May used to send his motion to the district court is in the record and shows that he used first-class postage to mail the motion on the last day to file his appeal. *See id.* 4(a)(5), 26(a)(1)(C). Anyway, he was not required to include a

declaration along with his motion to extend time because Rule 4(c)(1) expressly applies only to notices of appeal. Even if the absence of the declaration violated a case-processing rule governing motions in the district court, such violations are generally nonjurisdictional and can be waived when, as here, the motion goes unopposed in the district court. *See Eberhart v. United States*, 546 U.S. 12, 19 (2005). Finally, May's envelope for his motion to extend time is marked as "legal mail," and we have held that where the logical inference is that a prisoner timely deposited his filing in a prison's legal-mail system, then Rule 4(c)(1) is satisfied even without an adequate declaration. *See Ingram v. Jones*, 507 F.3d 640, 644 (7th Cir. 2010).

Second, the state argues that May's pro se brief was "impermissibly written by another inmate" since May acknowledges that a jailhouse lawyer prepared his brief. The state cites *Lewis v. Lenc-Smith Manufacturing Co.*, 784 F.2d 829, 831 (7th Cir. 1986)—a nonprisoner civil suit—where we were confronted with appellate papers signed by a nonattorney on a litigant's behalf. Instead of dismissing that appeal, we gave the litigant a chance to "take full responsibility for her appeal" by granting her time "to remedy the omission and to file a brief in her own right." *Id.* at 831. May's case is distinguishable because May is the only person who signed his papers, so he takes sole responsibility for its contents. In addition, prisoners' use of jailhouse lawyers is uniquely protected in the law. *See Johnson v. Avery*, 393 U.S. 483, 490 & n.11 (1969). Under these circumstances, we treat May's brief the same as we would if he had written it himself, instead of merely signing it. *See United States v. Sandoval-Lopez*, 409 F.3d 1193, 1198 (9th Cir. 2005) (viewing pleading broadly because litigant was "[p]roceeding pro se, or only with the assistance of a jailhouse lawyer"); *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997) (affirming denial of appointed counsel when inmate "had the assistance of 'jailhouse lawyers'"); *Merritt v. Faulkner*, 697 F.2d 761, 769 (7th Cir. 1983) (Posner, J., concurring) ("A prisoner not represented by counsel, even one assisted as here by 'lay advocates' (also known as 'jailhouse lawyers'), is entitled to every indulgence in the court's procedural rulings.").

Third, the state argues that May failed to exhaust his administrative remedies by not appealing the denial of his grievances. *See* ILL. ADMIN. CODE tit. 20, § 504.850(a). But the record contradicts this assertion. It shows that May did exhaust by appealing his second grievance to the Board and the director.

Onto the merits. May first challenges the district court's conclusion that the prison officials didn't intend to humiliate him by conducting the second strip search in front of female civilians. Because May is an inmate, we analyze his claim under the Eighth Amendment. *Peckham v. Wis. Dep't of Corr.*, 141 F.3d 694, 697 (7th Cir. 1998); *see Johnson v. Phelan*, 69 F.3d 144, 147 (7th Cir. 1995). A strip search violates the Eighth Amendment if it is "conducted in a harassing manner intended to humiliate and cause psychological pain." *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009); *see Whitman v. Nesic*, 368 F.3d 931, 934

(7th Cir. 2004); *Calhoun v. Detella*, 319 F.3d 936, 939 (7th Cir. 2003). A factfinder can reasonably infer an intent to harass when prison officials give no valid reason for a group strip search and guards demean prisoners during the search. *See Mays*, 575 F.3d at 650; *Farmer v. Perrill*, 288 F.3d 1254, 1260 (10th Cir. 2002) (upholding denial of summary judgment when no justification was given for group strip search). In addition, sexual ridicule and female spectators during a strip search can reasonably lead to the conclusion that the search was intended to humiliate. *See Calhoun*, 319 F.3d at 940.

The district court erroneously equated the presence of the female teachers to the practice of cross-sex monitoring by female prison guards, which can have a valid penological justification, *see Johnson*, 69 F.3d at 150-51, and concluded that there was no evidence of an intent to humiliate. But this search did not merely involve a female officer monitoring male inmates; according to affidavits from May and the other prisoners, the guards conducted the search in a group setting with female *civilian* spectators and allowed jeering and sexual ridicule. Both the presence of civilian spectators, *Calhoun*, 319 F.3d at 940, and jeering by observers, *Mays*, 575 F.3d at 650, are evidence of an intent to humiliate. Moreover, the prison officials offered no justification for performing the second, non-emergency strip search just an hour after the first, a fact that the district court ignored and which is further evidence of intended humiliation, *id*. Finally, the search violated an Illinois prison regulation that prohibits strip searches in front of people not conducting the search. *See* ILL. ADMIN. CODE tit. 20, § 501.220(b)(2). Although—as the district court noted—a regulatory violation does not itself make the search unconstitutional, the violation, combined with the unexplained reason for a second, group search in front of female civilians who peppered May with demeaning comments, further suggest that the guards intended the second search to humiliate May. *See Mays*, 575 F.3d at 650; *Caldwell v. Miller*, 790 F.2d 589, 610 (7th Cir. 1986).

We thus believe that May has a triable claim against Goken, who conducted the second search. Likewise, he also has a triable claim against Trancoso, Henry, Sambdman, Sternes, and Montgomery because May presented evidence that each one watched the second search without intervening, which is sufficient to subject them to liability. *See George v. Smith*, 507 F.3d 605, 609-610 (7th Cir. 2007); *Johnson v. Synder*, 444 F.3d 579, 584 (7th Cir. 2006). The district court, however, appropriately dismissed the prison director and warden. Their conduct was limited to reviewing the grievance about the search; as such, they could not have prevented further violation of May's rights. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009); *George*, 507 F.3d at 609-610.

We affirm the district court's judgment on May's remaining claims. To succeed on his claim that the guards strip searched him in the middle of the room as retaliation for protesting the second search, May must show that (1) his complaints were protected activity

under the First Amendment, (2) the guards' actions would deter protected activity in the future, and (3) his complaints motivated the guards' actions. *See Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). The state concedes that May's protests were protected activity and that subjecting him to a more invasive search in response to these protests would have violated the First Amendment. *See Mays*, 575 F.3d at 650. But May's search in the middle of the room wasn't materially different from the searches of the other inmates. Indeed, May's First Amendment claim is weakened by the same evidence that strengthens his Eighth Amendment claim: other inmates also describe that women, including civilians, watched and ridiculed them too during their strip searches. Although May says that he was moved away from the wall and surrounded by officers during the second search, this minor difference alone would not reasonably be expected to deter an inmate from protesting in the future. *See Bridges*, 557 F.3d at 555; *Morris v. Powell*, 449 F.3d 682, 687 (5th Cir. 2006); *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise . . . ."), *applied to prisons in Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). The district court thus appropriately granted summary judgment on May's retaliation claim.

May also contends that the district court underestimated the degree of mental anguish he experienced from the drug test. He tries to recast the drug test as an unreasonable search in violation of the Fourth Amendment. But compelling a prisoner to urinate for a drug test while in private, with no outside spectators, under the observation of just a single male guard is neither unreasonable nor without penological justification. *See Whitman*, 368 F.3d at 935; *Thompson v. Souza*, 111 F.3d 694, 703 (9th Cir. 1997). And Officer Goken's brief verbal ridicule of May as he provided the sample in private does not amount to cruel and unusual punishment. *See Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000).

May also contests the dismissal of his claim that Officer Goken acted with deliberate indifference to his shoulder pain. To avoid dismissal, May needed to allege that Goken was actually aware of a "serious medical need," and then acted with deliberate indifference—not merely gross negligence—to that need. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). May concedes that he received medical treatment before and after the inspection, and he never says that he requested medical attention during the cuffing. He merely argues that Goken should have handcuffed him in front, rather than behind, after he complained of shoulder pain. But Goken didn't have to believe May's unsubstantiated complaints of pain and make special accommodation for May in the midst of maintaining order during the search and

inspection. *See Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008) (noting that prison guards "are not required to act flawlessly" in determining severity of prisoners' medical conditions); *Riccardo v. Rausch*, 375 F.3d 521, 527 (7th Cir. 2004) ("The Constitution does not oblige guards to believe whatever inmates say."). Although May argues that by leaving him handcuffed for three hours, Goken created the danger that May would fall and reinjure his shoulder, we agree with the district court that May presented no evidence that the danger was both substantial and known to Goken. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Santiago v. Wells*, 599 F.3d 749, 757 (7th Cir. 2010).

The district court's grant of summary judgment on May's claim regarding the second strip search is VACATED and the case REMANDED for further proceedings consistent with this opinion. The court's judgment on the rest of May's claims is AFFIRMED.