In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-1085

VICKI BARBERA,

*Plaintiff-Appellant,*

*v.*

PEARSON EDUCATION, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:16-cv-2533-JMS-DML — **Jane Magnus-Stinson**, *Chief Judge.*

ARGUED MAY 24, 2018 — DECIDED OCTOBER 12, 2018

Before MANION and BARRETT, *Circuit Judges,* and
GETTLEMAN, *District Judge.*[*]

MANION, *Circuit Judge.* Vicki Barbera claims she did not get
the same chance to resign with severance pay that three men
got. She sued her former employer, Pearson Education, Inc.
("Pearson") for Title VII sex discrimination and other claims.

---

[*] Of the Northern District of Illinois, sitting by designation.

She also says Pearson lost a key email exchange. The magistrate judge cured this by barring Pearson from disputing her description of it, but declined to grant further sanctions. The district court overruled Barbera's objection. Accepting her version of the missing emails, the district court granted summary judgment to Pearson because the proposed comparators were not similarly situated. They sought resignation with severance pay[1] before circumstances materially changed, but Barbera sought resignation with severance pay after they changed. Barbera appeals the district court's overruling her objection about the emails and granting Pearson summary judgment on the severance-pay discrimination claim. We affirm the district court.

## I. Facts[2]

### A. Background

Pearson is an education publishing and assessment company. It employed Barbera from February 6, 1989, to February 29, 2016. Her last position was Manager of Business Analysis. Back in April 2007, Pearson issued a Severance Policy providing severance pay. Only employees involuntarily terminated without cause are eligible for severance pay ("No Voluntary Departure" clause). Thus, employees leaving voluntarily are ineligible. Also, if an employee is terminated as a result of a sale, merger, "or any other transaction when [an] employee is offered employment by the purchaser or another employer in

---

[1] We use "severance pay" as shorthand for "severance pay and benefits." A distinction between severance pay and benefits is immaterial here.

[2] We present the facts in the light most favorable to Barbera.

connection with the transaction," the employee is ineligible for severance pay ("Merger/Acquisition" clause).

In 2013, Pearson began to shift focus from physical to digital products. It saw a need to reduce its warehouses. Carving an exception to the Severance Policy, Pearson issued a Voluntary Separation Plan in 2013 ("2013 VSP"), offering severance pay to certain employees who left voluntarily. Eligible employees had a deadline to accept. Barbera was ineligible for the 2013 VSP because it did not apply to her department.

Pearson issued another VSP in 2014 ("2014 VSP"), with a narrow acceptance window: February 17–28, 2014. Barbera was eligible for the 2014 VSP, through which she could have voluntarily resigned and received severance pay. She considered it, but declined. Pearson did not offer another VSP in 2014 or 2015. All separations after the 2014 VSP fell under the Severance Policy, which states employees who leave voluntarily do not get severance pay and states employees terminated as a result of any transaction but offered employment by the purchaser or other employer do not get severance pay. But Barbera points to three men who voluntarily left outside the VSPs yet received severance pay.

In July 2014, Pearson issued a "Request for Proposal" to various entities, including R.R. Donnelley & Sons Company ("Donnelley"), seeking to outsource.

## B. Proposed comparators seek and receive severance pay

In August 2014, Paul Zale (Director of Engineering) decided to leave Pearson. He approached his boss about leaving with severance pay and was offered it. He left Pearson on September 5, 2014. Pearson continued to pay him for 34 weeks.

In March 2015, Thomas Lukasik (Key Account Manager) spoke with Michael Nathanson (a Senior Vice President at Pearson) and asked about voluntarily separating from Pearson. Nathanson told Lukasik if he stayed until the end of a project he could leave Pearson. Pearson allowed Lukasik to leave voluntarily in June 2015 with six months of severance pay. Lukasik stated that when his employment with Pearson ended, "Pearson was looking to do another layer of budget reduction." (Lukasik Aff. ¶ 6, No. 1:16-cv-2533, DE 50-2 at 21.)

In April 2015, Tony Ramsey (Information Technology System Administrator) told Debbie Freeman (Pearson's Director of Human Resources) he wanted to leave and asked about severance pay. Pearson allowed him to resign voluntarily that month with 38 weeks of severance pay. Ramsey stated that when his employment with Pearson ended, "Pearson was looking for management-level employee reductions … ." (Ramsey Aff. ¶ 7, No. 1:16-cv-2533, DE 50-2 at 6.)

*C. Transfer to Donnelley*

During the summer of 2015, Pearson decided to transfer[3] its warehouses and print services to Donnelley. By July 2015,

---

[3] Barbera drops a footnote in her appellate brief to clarify the nature of the transaction between Pearson and Donnelley: "The R.R. Donnelley outsourcing was not a sale of assets, sale of stock, merger, consolidation, liquidation or dissolution. Rather, Pearson was looking for an entity to operate its end-to-end print supply chain in North America, and ultimately transferred its warehouses, print manufacturing, paper procurement, and supporting services to R.R. Donnelley." (Appellant Br. at 28 n.8.) Pearson's appellate response mentions "selling a portion of its business … ." (Appellee Br. at 12.) And the district court's order mentions "the sale to R.R. Donnelley … ." (Order granting SJ, No. 1:16-cv-2533, DE 70 at 20.) But both parties and the district court generally refer to the deal as a "transaction" or "transfer" or "outsourcing." In any event, the specific

Pearson gave Donnelley a list of employees at the warehouses so Donnelley could make placement decisions. In September 2015, before the formal announcement of the transaction, Mike Scheuring (Director of Supply Chain, Barbera's direct boss) told Barbera about it. He told her warehouse employees (including her) would be "rebadged" (stay on the job but transfer employment) to Donnelley on February 29, 2016. Pearson and Donnelley signed a contract on October 13, 2015. The effective date of the transfer was February 29, 2016.

### D. Barbera seeks severance pay

"Sometime in the later part of 2015," Barbera verbally asked three people at Pearson if she could leave with severance pay. (Appellant Br. at 9.) She spoke with Freeman, Tim Martin (all management reported to Martin), and Scheuring. She "felt that she was given the runaround." (*Id.*) Each directed her to Nathanson. Barbera admitted she has no evidence she made these requests before September 2015, and she does not claim she made these requests before then.

Barbera asserts in her appellate brief that she asked repeatedly, "beginning in the later part of 2015," to leave with severance pay. (Appellant Br. at 9.) She echoes this by saying "[s]ometime in the later part of 2015" she approached several individuals about severance pay. (*Id.*) These statements in her brief, though not precise, are clearer than her deposition about timing: "And in fact, [Debbie Freeman is] the first one,

---

transactional method is not relevant here. The Severance Policy's prohibition of severance pay includes this language: "*any other transaction* when such employee is offered employment by the purchaser or another employer in connection with the transaction … ." (Severance Policy, revised Jan. 1, 2015, No. 1:16-cv-2533, DE 50-4 at 17, emphasis added.)

later in the year, that I approached and asked if there would be any severance available." (Barbera Dep., 126:18–126:21, No. 1:16-cv-2533, DE 51 at 27.) Barbera provided more specificity about timing in her summary judgment response, as we see below.

In its summary judgment brief, Pearson stated: "Shortly after learning of the transaction in mid-September 2015, Ms. Barbera asked several individuals whether there was any possibility of voluntarily ending her employment with Pearson and receiving severance." (Pearson MSJ Br., No. 1:16-cv-2533, DE 52 at 10.) Barbera responded: "Defendant's Brief argues that Ms. Barbera made these requests 'shortly after learning of the transaction in mid-September, 2015.' However, there is no evidence in the record to indicate whether these requests were made before or after September, 2015." (Barbera MSJ Resp., No. 1:16-cv-2533, DE 60 at 14 n.3, internal citation omitted.) The district court correctly noted Barbera's admission that there is no evidence in the record to indicate whether she made her initial three requests for severance before or after September 2015 and correctly noted she bears the burden of identifying similarly situated individuals but she has not alleged, much less shown, that she requested severance in the same period as the three proposed comparators. On appeal, Barbera does not point us to anything regarding the timing of these requests more specific than the statement in her brief that she approached several individuals "[s]ometime in the later part of 2015." (Appellant Br. at 9.) Thus, the light most favorable to her would have put the beginning of her severance requests at July 1, 2015, at the earliest, which is well after the last date a proposed comparator asked for severance (Ramsey, April 2015). But even this light is too far a stretch and cannot be supported because Barbera admitted there is

no evidence in the record that she made these requests before September 2015, and she does not claim she made these requests before then.

In this context, the district court observed the "only evidence of these requests consists of Ms. Barbera's deposition testimony on the subject." (Order granting SJ, No. 1:16-cv-2533, DE 70 at 19 n.5.) Barbera argues on appeal the district court discounted the credibility of her testimony, failed to view the evidence in the light most favorable to her, and failed to draw inferences in her favor. To the contrary, the district court accepted Barbera's version of the interactions, and correctly held that Barbera presented no evidence that she requested severance during the same relevant time period as the proposed comparators did. Considering everything Barbera has raised, the light most favorable to her shows she first requested severance in September 2015 at the earliest.

### E. Barbera's further requests for severance pay

At an all-employee meeting on January 12, 2016, Pearson formally announced the transaction with Donnelley by stating about 700 warehouse employees would be terminated by Pearson on February 29, 2016, and would be notified whether they would transition to Donnelley. Pearson told its employees if they decided to resign instead of transition they would not receive severance, consistent with the Severance Policy.

In January 2016, around the time of that announcement, Barbera emailed Nathanson and asked if she could leave with severance pay. She copied Scheuring. Nathanson replied via email that if she wanted to exit voluntarily with severance, she had to ask within the deadline for the 2014 VSP. Na-

thanson's reply did not mention the transaction or "rebadg-ing" as the reasons for denying her severance request. This email exchange is missing. We accept Barbera's version of it.

Sometime after Nathanson denied Barbera's severance re-quest, Barbera spoke with Freeman about Zale and Lukasik resigning but still receiving severance pay, and said it did not seem fair. Freeman reminded her Ramsey also received sev-erance pay and then said, "don't tell them I told you."

On February 8, 2016, Barbera renewed her request for sev-erance pay by having her attorneys write to Dan Lennon, Pearson's Vice President and Senior Counsel. Pearson again denied the request, but gave a different explanation. Lennon wrote on February 18, 2016, Barbera was ineligible for sever-ance pay under the Severance Policy because her separation related to a "merger or acquisition" and because Donnelley offered her a job. Lennon spoke with Nathanson the same day about a litigation hold, but never spoke with Scheuring about one. After the conversation between Nathanson and Lennon, "Pearson destroyed all copies of the email string on which Mr. Nathanson was a recipient and reply author." (Appellant Br. at 12.) Pearson also destroyed Barbera's entire email account.

Barbera's employment with Pearson ended on February 29, 2016. Barbera did not appear for work on the day she could have begun employment with Donnelley.

*F. Summary of facts*

Pearson did not allow Barbera to leave outside a VSP with severance pay even though it allowed three men to do so. The three men each sought severance after the 2014 VSP deadline and after Pearson issued the Request for Proposal in July 2014, but before Pearson decided in the summer of 2015 to contract

with Donnelley, before Pearson gave Donnelley an employee list by July 2015, and before the contract was signed on October 13, 2015. The deal's effective date was February 29, 2016. Barbera first sought severance pay "later in the year" 2015 and has no evidence (and does not claim) she asked for it before September 2015. Her employment was involuntarily terminated on February 29, 2016. Pearson never issued a written litigation hold for this matter and never communicated with Scheuring about a litigation hold. During this litigation, Barbera asked Pearson to produce her January 2016 email exchange with Nathanson in which he told her she could not receive severance pay because she missed the 2014 VSP deadline. But Pearson never produced it. Barbera insists she did not delete it. We accept her version of the email exchange.

## II. Procedural Posture

Litigation ensued. Barbera moved under Rule 37(e) for sanctions against Pearson regarding the missing email exchange. Pearson moved for summary judgment on all claims. The magistrate judge granted Barbera's motion in part by ordering as a cure that the jury would be instructed to take as true the matters described in paragraphs 1 through 6 of Barbera's proposed stipulations of fact, but denied the motion in part by not granting further sanctions. Barbera objected. The district court overruled the objection and granted summary judgment to Pearson on all claims. Barbera appeals the order overruling her objection regarding sanctions and appeals the grant of summary judgment regarding the Title VII severance-pay sex-discrimination claim. She does not appeal the grant of summary judgment to Pearson on her other claims.

## III. Analysis

### A. Missing emails

We review the denial of discovery sanctions for abuse of discretion. *Chatham v. Davis*, 839 F.3d 679, 687 (7th Cir. 2016). Barbera argues the lower courts did not go far enough in sanctioning Pearson for destroying the emails. Preliminarily, the magistrate judge found Pearson failed to take reasonable steps to preserve relevant electronically stored information, but only ordered Pearson could not contest Barbera's recollection of the emails. Specifically, the magistrate judge held any prejudice could be cured by requiring paragraphs 1 through 6 of Barbera's proposed stipulations of fact—concerning the contents of the email exchange—be taken as true. The magistrate judge declined to grant further sanctions because it found "[t]he record before the court does not lead the court to the conclusion that Pearson (or anyone whose actions can be attributed to it) acted with the intent to deprive Ms. Barbera of the use in the litigation of the information in the email exchange." (MJ's Order Mot. Sanctions, No. 1:16-cv-2533, DE 62 at 11.) Barbera objected and asked the district court to consider further sanctions, including ordering an eventual jury to take as true all her proposed stipulations of fact, but the district court overruled the objection because she had not identified, and the court had not found, evidence of bad faith or intent to deprive.

If a party should preserve electronically stored information for litigation but loses it by failing to take reasonable preservation steps, the court upon finding prejudice "may order measures no greater than necessary to cure the prejudice" to the other party from the loss. Fed. R. Civ. P. 37(e)(1). Bar-

bera seems to acknowledge the lower courts cured the prejudice by taking paragraphs 1 through 6 of her proposed stipulations of fact as true.

If the court finds the party "acted with the intent to deprive another party of the information's use in the litigation," the court "may" impose further sanctions, including default judgment. Fed. R. Civ. P. 37(e)(2). Barbera acknowledges she has no direct evidence of Pearson's intent, but argues circumstantial evidence, including the timing of the loss, is beyond coincidental. We see no abuse of discretion. The district court was not unreasonable in declining to find Pearson intended to deprive her of the emails. Besides, even had the district court made such a finding, relief was discretionary. And she has not shown how acceptance of the other allegations in her proposed stipulations would prevent summary judgment.

The cure granted was enough. The court accepted as true paragraphs 1 through 6 of her proposed stipulations: 1) Barbera emailed Nathanson (copy to Scheuring) in January 2016, around the time of the formal announcement of the transaction; 2) her email asked him whether she could receive severance pay rather than rebadging and stated she would be happy to extend her employment long enough to help in the transition but she did want to leave; 3) he responded within one workday by denying her request for severance pay and stating that if she wanted to exit with severance she had to ask within the 2014 VSP deadline; 4) she interpreted his email as referring to the Voluntary Severance Pay policy of February 1, 2014; 5) his reply did not say anything about the outsourcing or transaction being the reason for denying her request for severance; 6) his reply did not say anything about rebadging being the reason for the denial. We also accept these facts as

true. But they make no difference here. Even Barbera's version of the emails contains neither a fabled smoking gun, nor a shard of colored glass for the (jettisoned) convincing mosaic, nor any other reason to deny summary judgment.

## B. Summary judgment

We review the grant of summary judgment *de novo*. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). We view the facts in the light most favorable to Barbera and draw all reasonable inferences in her favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).

The district court granted Pearson summary judgment on Barbera's Title VII gender-discrimination claim. Barbera appeals summary judgment on this claim, but she does not appeal summary judgment on any other claim. Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin … ." 42 U.S.C. § 2000e-2(a)(1). With such a claim, the "fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination." *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014). "To survive summary judgment on a Title VII discrimination claim, a plaintiff must present 'evidence [that] would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused'" the adverse employment action. *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 710 (7th Cir. 2017) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). In *Ortiz*, we exterminated "the rat's nest of surplus

'tests'" in these cases, rejected unhelpful distinctions between evidence, and emphasized that "all evidence belongs in a single pile and must be evaluated as a whole." *Ortiz*, 834 F.3d at 766. But we left *McDonnell Douglas* burden-shifting as a viable option for pursuing employment discrimination claims.

At summary judgment, Pearson and Barbera organized their arguments in terms of the *McDonnell Douglas* framework and the district court followed. Under this framework, Barbera first had to show: 1) she is a member of a protected class; 2) she performed her job to her employer's expectations; 3) she suffered an adverse employment action; and 4) one or more similarly situated individuals outside her protected class received better treatment. *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 500 (7th Cir. 2017). If she made this *prima facie* showing, then the burden would shift to Pearson to present a legitimate, non-discriminatory reason for the challenged employment action. *Id.* If Pearson carried this burden, then the burden would shift back to Barbera to show pretext, or at least to produce evidence establishing a genuine factual dispute about pretext to defeat summary judgment. *Id.*

Pearson does not contest the first three parts of the *prima facie* showing. The district court granted summary judgment to it because Barbera failed to satisfy the fourth; she did not raise evidence or reasonable inferences sufficient for a reasonable jury to find any similarly situated individuals received better treatment. "'[A]n employee is similarly situated to a plaintiff if the two employees deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their employer's treatment of them.'" *Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017)

(quoting *Hanners v. Trent*, 674 F.3d 683, 692–93 (7th Cir. 2012)). "'Similarly situated employees must be directly comparable to the plaintiff in all material respects,' yet this is a flexible inquiry with no magic formula." *Khowaja v. Sessions*, 893 F.3d 1010, 1015 (7th Cir. 2018) (quoting *Coleman v. Donahoe*, 667 F.3d 835, 846–47 (7th Cir. 2012)). "Whether a comparator is similarly situated is usually a question for the fact-finder, and summary judgment is appropriate only when no reasonable fact-finder could find that plaintiffs have met their burden on the issue." *Coleman*, 667 F.3d at 846–47 (internal quotation marks and citation omitted).

This case boils down to timing. Barbera points to three men who received severance pay outside the VSPs. But these three requested severance pay and left Pearson well before Barbera made her first severance request "sometime in the later part of 2015" but not before September 2015, and well before she emailed Nathanson with the request in January 2016. Zale requested severance pay in August 2014 and left in September 2014. Lukasik requested severance pay in March 2015 and left in June 2015. Ramsey requested severance pay and left in April 2015. The timing distinction means the proposed comparators are not similarly situated because Pearson went through rapid, material changes during 2015. It decided in the summer of 2015 to contract with Donnelley. As the district court noted, in July 2015 Scheuring began giving Donnelley ratings detailing his team's skills to assist it with placement decisions. By September 2015, Scheuring told Barbera he would ask her for data because a transition was going to happen. On October 13, 2015, Pearson signed the contract with Donnelley. The district court correctly concluded that Pearson's impending transaction with the promise of continued

employment to individuals such as Barbera is a differentiating circumstance between her and the proposed comparators. When Barbera sought severance pay, Pearson was in the midst of transferring some of its business and transitioning some of its employees to Donnelley. By the time she sought severance pay, Pearson had already told Donnelley which employees would be available to transition.

When the three proposed comparators sought severance, Pearson was shifting to digital products, consolidating warehouses, and making other budget cuts. But when Barbera first sought severance "sometime in the later part of 2015" but not before September 2015, Pearson was not seeking to eliminate positions for budget concerns, and had already decided to transition its entire warehouse workforce to Donnelley. When Barbera first sought severance, the transaction was final or nearly final, and Pearson had given information about its employees, including Barbera, to Donnelley so it could make placement decisions. Barbera did not seek severance until after discussions about transitioning employees began, but the proposed comparators sought severance significantly earlier.

Another significant difference is none of the three proposed comparators were offered jobs by Donnelley and there is no evidence it would have offered them jobs. But Barbera was offered the same position she held at Pearson. This is significant because the Severance Policy prohibited severance pay in the event of a corporate transaction when the employee was offered employment by the acquiring entity: "no severance will be paid to an employee terminated as a result of a sale of assets, sale of stock, merger, consolidation, liquidation, dissolution or any other transaction when such employee is offered employment by the purchaser or another employer in

connection with the transaction, regardless of whether the position offered is comparable to the employee's current position or is accepted by the employee." (Severance Policy, revised Jan. 1, 2015, No. 1:16-cv-2533, DE 50-4 at 17.) None of the proposed comparators left Pearson because of a transaction with another company in which they were offered employment.

In sum, there are at least two main, related reasons the three proposed comparators are not similarly situated to Barbera. One is the timing of the requests for severance pay. The circumstances at Pearson materially changed between the time the last proposed comparator sought severance pay (April 2015) and the time Barbera first sought severance pay (sometime in the later part of 2015 but not before September 2015). The other stems from the Severance Policy's Merger/Acquisition clause, which prevented Barbera from receiving severance pay but did not prevent the three proposed comparators from receiving it.[4]

To avoid Title VII sex-discrimination liability, Pearson did not need to make wise or even generally fair decisions, so long

---

4

"**Severance as a Result of Merger/Acquisition**

"Notwithstanding any other provision of this Policy, no severance will be paid to an employee terminated as a result of a sale of assets, sale of stock, merger, consolidation, liquidation, dissolution or any other transaction when such employee is offered employment by the purchaser or another employer in connection with the transaction, regardless of whether the position offered is comparable to the employee's current position or is accepted by the employee."

(Severance Policy, revised Jan. 1, 2015, No. 1:16-cv-2533, DE 50-4 at 17.)

as it did not discriminate on the basis of sex. When all the evidence is piled together, there are no facts or reasonable inferences from which a reasonable jury could conclude Pearson discriminated against Barbera because of her sex. She argues on appeal a jury should decide the "fact-driven and credibility-laden" evaluation of whether the proposed comparators are similarly situated to her. (Appellant Br. at 21.) We agree with her that facts drive this case. Most cases are fact-driven—and law-driven. We would also agree with her that this case is fact-intensive. But even viewing the facts in the light most favorable to her, and drawing all reasonable inferences in her favor, we agree with the district court that the proposed comparators are not similarly situated to her and that she has shown no grounds for a reasonable jury to find sex discrimination. Sheer complexity is not enough to stave off summary judgment. Indeed, facts that are merely complicated but nevertheless ineluctably point to one conclusion amount to even less than the scintilla of evidence that famously cannot stave off summary judgment. And whether or not this case is particularly credibility-laden, we take Barbera at her word but still see no path around summary judgment.

We are mindful that the "similarly situated" requirement is part of the *McDonnell Douglas* boost to plaintiffs, and should not be an insurmountable obstacle. *Coleman*, 667 F.3d at 852. But although the proposed comparators need not be identical to Barbera, they must be situated similarly enough to suggest prohibited discrimination. At summary judgment, Barbera needed to come forward with evidence of discrimination. She pursued the *McDonnell Douglas* path but did not reach the end because timing and the Merger/Acquisition clause distinguish Barbera from the proposed comparators.

We agree with the district court that Barbera failed to make a *prima facie* showing of discrimination under the *McDonnell Douglas* framework to avoid summary judgment. But given *Ortiz*'s admonition to pile all the evidence together, we will address her claim of pretext. She argues Pearson gave two different explanations for the denial of severance, creating a genuine issue of material fact regarding pretext. Specifically, she argues that Nathanson's explanation of the denial (in the missing January 2016 email which we accept Barbera's account of) was contradicted by Lennon's explanation (in the February 8, 2016 letter). Nathanson's email said Barbera had to opt into the 2014 VSP and did not say anything about the Donnelley transaction being the reason for the denial. But Lennon's letter said the Merger/Acquisition clause of the Severance Policy applied to her due to the impending Donnelley transaction. The two explanations differ, but they are not mutually exclusive. Both can be true without violating the principle of non-contradiction. A comparison of the email to the letter does not suggest pretext or sex discrimination.

Barbera also claims the district court committed error by applying the "preponderance of the evidence" standard to the pretext issue on summary judgment. It is true that the district court used the wrong phrase in concluding she had "not met her burden of proving by a preponderance of the evidence that the reasons were pretext for discrimination." (Order granting MSJ, No. 1:16-cv-2533, DE 70 at 22.) At the summary judgment stage, she needed only to raise a genuine issue of material fact; she did not need to prove anything. But the district court's language was harmless. After all, it wrote in the preceding sentence: "Nothing in the record suggests that either of those reasons were proffered by Pearson in order to mask unlawful discrimination or that Pearson lied about its

reasons for not offering Ms. Barbera severance." (*Id.*) So even though the burden language was wrong, the point is clear: there is no evidence of pretext. Moreover, the misstatement of the burden is also harmless because our review is *de novo*.

## IV. Conclusion

We AFFIRM the decisions of the district court overruling Barbera's objection regarding sanctions and granting summary judgment to Pearson on Barbera's Title VII severance-pay sex-discrimination claim.