**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 11, 2020[*]
Decided May 11, 2020

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-2851

| | |
|---|---|
| THOMAS MCNEAL,<br>    *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 18 CV 5064 |
| PRESENCE CHICAGO HOSPITALS NETWORK,<br>    *Defendant-Appellee*. | Ronald A. Guzmán,<br>*Judge*. |

**O R D E R**

Thomas McNeal sued his former employer, Presence Chicago Hospitals Network, contending that it fired him because of his disabling leg pain, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112. The district court entered summary judgment for Presence, concluding that McNeal was not disabled and that, in any case, Presence demonstrated that it fired him because of an inappropriate note he

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. See FED. R. APP. P. 34(a)(2)(C).

wrote in a patient's chart. McNeal failed to provide evidence that Presence discharged him because of his alleged disability, so we affirm.

McNeal treated inpatient psychiatric patients as a mental health counselor. As part of his job, he regularly had to restrain patients and physically protect himself from their violent outbursts. And for the first eight years of his employment, McNeal had no trouble meeting the physical demands of his work environment. But in 2017, he developed osteoarthritis and spinal stenosis, two conditions that caused him to experience pain while walking. McNeal's pain worsened until he had trouble staying on his feet for an entire shift, at which point he took a four-month medical leave of absence. He eventually returned to work without any restrictions.

Shortly after his return, one of McNeal's coworkers complained to their supervisor, Margaret Graham, that McNeal was using a Dynamap (a wheeled machine that takes vital signs) to help himself walk. Graham and another supervisor reviewed surveillance video and confirmed that McNeal was using the machine as a cane for most of his shift. The supervisors were concerned that this posed a safety risk because a patient could knock McNeal off balance by kicking the device, so they required McNeal to seek physical evaluations to determine if he could perform his job. McNeal was allowed to keep working while the evaluations were pending, and two physicians eventually cleared him for work without restrictions.

Two months later, a different coworker discovered a derogatory note that McNeal had written in a patient's medical chart. McNeal referred to the patient as a "moron" and derided the patient for lack of improvement. He also criticized the treating physician's decision to discharge the patient as "inexplicabl[e]." Graham was on leave, so the employee reported the note to Graham's supervisor, the operations manager. The manager was hesitant to make a disciplinary recommendation because she was unfamiliar with McNeal and his work history, so she forwarded the complaint to Presence's human resources department.

A human resources manager recommended discharge. She believed that discharge was necessary because the note was cruel, unprofessional, exhibited disdain towards a patient, and inappropriately criticized a physician's treatment decisions. McNeal also had a history of disciplinary issues, including two incidents in which he

had received a "final written warning," the harshest discipline short of discharge under Presence's progressive discipline policy. The operations manager agreed with the recommendation, as did Graham when she returned from leave.

McNeal sued Presence, alleging that it fired him because of his physical impairments in violation of the Americans with Disabilities Act. The district court entered summary judgment for Presence, concluding that McNeal had failed to put forth evidence that he was disabled, or that his employer regarded him as disabled, within the meaning of the Act. Even if McNeal were disabled, the court continued, he could not show that his physical impairments were the cause of his discharge.

On appeal, we first acknowledge Presence's request to strike McNeal's brief for failure to comply with Federal Rule of Appellate Procedure 28. Although McNeal could have done a better job of citing the record and relevant legal authorities, his brief clearly articulates his contentions and contains enough information for us to discern what legal authority and parts of the record he is relying on. And given his pro se status in this court, we give him the benefit of the doubt. See *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017). We thus proceed to the merits of his appeal despite the lack of total compliance with Rule 28. See, e.g., *Wonsey v. City of Chicago*, 940 F.3d 394, 399 (7th Cir. 2019). We will not, however, consider any factual allegations not raised in the district court. See *Betco Corp., Ltd. v. Peacock*, 876 F.3d 306, 309 (7th Cir. 2017).

On the merits, we agree with the district court that, even assuming McNeal was disabled within the meaning of the Act, no reasonable juror could conclude that he would have kept his job had he not been disabled but everything else remained the same. See *Graham v. Arctic Zone Iceplex*, 930 F.3d 926, 929 (7th Cir. 2019). McNeal relies on two lines of evidence for his contention that Presence fired him because of his difficulty walking, but neither is sufficient to create a genuine dispute of material fact.

First, McNeal argues that a jury could infer discriminatory intent because Graham required him to seek a physical evaluation and then acted unfriendly toward him after he passed the examination. But this argument fails for several reasons. Most significantly, two other supervisors recommended firing McNeal before Graham agreed, and McNeal does not argue that either of them had a discriminatory motive. See, e.g., *Riley v. City of Kokomo*, 909 F.3d 182, 191 (7th Cir. 2018) (summary judgment appropriate when no evidence showed that supervisor's animus influenced different

supervisor's discharge decision). Further, McNeal's premise that Graham harbored animus is unsupported. Employers can require employees to undergo medical evaluations to determine if they can safely perform essential job functions. *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 903 (7th Cir. 2018). And McNeal does not dispute that his job required physical strength and mobility, nor that Graham ordered the evaluations only after receiving a complaint about McNeal's ability to perform the job safely and viewing surveillance video that corroborated that complaint. As for Graham's alleged hostility, McNeal points only to his testimony that Graham failed to greet him in the hallway. But isolated incidents of unfriendliness or "other subtle indicia of distaste" are generally not evidence of discriminatory animus. *Grigsby v. LaHood*, 628 F.3d 354, 358 (7th Cir. 2010).

McNeal's second line of evidence is the differential treatment of six non-disabled employees who, he says, engaged in similar conduct and were not discharged. But for an employer's differential treatment of employees to be evidence of discrimination, the other employees must be directly comparable in all material respects. See *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 629 (7th Cir. 2018). And here, each of McNeal's proposed comparators is distinguishable in at least one of two crucial ways.

First, most of the other employees lacked disciplinary histories similar to McNeal's. For some, the record simply lacks information about the length of their tenure or whether they had incurred prior discipline—omissions that, as the district court correctly pointed out, prevent any meaningful comparisons. See *Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 662 (7th Cir. 2016). For others, the record contains information about their work histories that differentiates them from McNeal. For example, one coworker received lenience specifically because, unlike McNeal, he had no prior infractions. Another escaped discipline only because he quit the job before Presence could fire him. No reasonable jury could infer that this differential treatment resulted from discrimination.

Second, the nature of McNeal's misconduct differs from that of several of his alleged comparators. For example, McNeal argues that Presence did not fire a nurse who administered incorrect medication. But Presence has a policy against issuing punitive discipline for medication errors so as not to discourage staff from reporting their errors. McNeal also relies on several instances in which coworkers were merely

*accused* of misconduct. And the record shows that Presence investigated those accusations but ultimately did not act on them because it found no corroborating evidence. Because McNeal has not shown that these employees engaged in misconduct of comparable seriousness, Presence's failure to discharge them is not evidence of discrimination. See *Coleman v. Donahoe*, 667 F.3d 835, 850 (7th Cir. 2012).

Since McNeal lacks evidence that Presence fired him because of his physical impairments, we need not decide whether he could show that those impairments qualify as a disability under the Act.

AFFIRMED