In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-4162

DONNA NICHOLSON,

*Plaintiff-Appellant,*

*v.*

CITY OF PEORIA, ILLINOIS, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:14-cv-01369 — **Michael M. Mihm**, *Judge.*

ARGUED MAY 24, 2017 — DECIDED JUNE 20, 2017

Before POSNER, MANION, and KANNE, *Circuit Judges.*

MANION, *Circuit Judge.* Peoria police officer Donna Nicholson appeals from a judgment against her in this discrimination and retaliation case. She also appeals the denial of her motion for reconsideration and motion to disqualify Judge Mihm. For the reasons stated below, we agree with the district court that Nicholson did not present sufficient evidence to survive summary judgment on either claim. Moreover, the district court did not err in denying Nicholson's motion for

reconsideration or the motion to disqualify Judge Mihm, which was frivolous. Therefore, we affirm the judgment below.

## I. Background

Donna Nicholson has been a police officer in Peoria, Illinois since 1991. In 2003, she was assigned the position of Asset Forfeiture investigator. Five years later, Nicholson began having serious issues with fellow officer Jeffrey Wilson, whom she accused of using Peoria Police Department equipment to place her under surveillance. The Department conducted an internal affairs investigation into Wilson's behavior, after which he was suspended for twenty days (although Nicholson notes that the suspension was not directly for the alleged surveillance, but other things such as Wilson's lewd sexual remarks about Nicholson's daughter).[1] Thereafter, Nicholson filed a charge of discrimination with the Equal Employment Opportunity Commission and then a lawsuit related to Wilson's conduct. Her suit was settled and dismissed.

In July 2012, Chief of Police Steven Settingsgaard issued a General Order Regarding Transfer and Rotation ("Rotation Policy"). The new Rotation Policy provided that all specialty assignments, like Nicholson's position of Asset Forfeiture investigator, would be subject to three-year rotations. The current occupant of each position could seek reappointment, however, and Nicholson did so, submitting her application in August 2012. She interviewed in October, and it did not go

---

[1] The police department and the union apparently reached an agreement whereby Wilson agreed that he wouldn't challenge the suspension and the department agreed not to terminate him. That appears to be the reason Wilson's punishment wasn't more severe.

well. According to the panel that interviewed her, Nicholson "[i]nterviewed very poorly, seemed angry [and] controlling." She began her interview by refusing to answer any questions until she read aloud a nine-page manifesto, clearly a highly unusual behavior. In the end, the panel concluded that Nicholson was "knowledgeable" but that the Department was "due for [a] change."[2] The panel selected Officer Troy Skaggs, who it said "[g]ave an outstanding interview." After her failure to retain the Asset Forfeiture position (and having not applied to any other positions), Nicholson was reassigned to patrol by default on January 6, 2013.

Once Nicholson discovered that she would not remain in the Asset Forfeiture position, she filed a charge of discrimination with the EEOC, alleging that sex discrimination and unlawful retaliation cost her the job. After receiving a right-to-sue letter, she filed this case. The district court granted summary judgment for the defendants, and then denied Nicholson's motion for reconsideration. The court also denied Nicholson's motion to disqualify Judge Mihm, which was made on the ground that he was counsel for Peoria more than four decades ago. Nicholson timely appealed all three orders.

## II. Discussion

### A. Standard of Review

We review the district court's grant of summary judgment de novo. *Burton v. Bd. of Regents*, 851 F.3d 690, 694 (7th Cir. 2017). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the moving party

---

[2] As a reminder, Nicholson had been in the Asset Forfeiture position for nine years at the time of her reassignment.

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
Therefore, we view all evidence in the light most favorable to
Nicholson, who was the non-moving party. *Burton*, 851 F.3d
at 694. The defendants are entitled to summary judgment if
Nicholson "cannot present sufficient evidence to create a dis-
pute of material fact regarding any essential element of her
legal claims on which she bears the burden of proof." *Id.*

We review the denial of a motion for reconsideration only
for abuse of discretion. *United Cent. Bank v. KMWC 845, LLC*,
800 F.3d 307, 309 (7th Cir. 2015). In this case, however, our re-
view of the motion for reconsideration essentially merges
with the merits of the summary judgment disposition. That is
because Nicholson argued below that the district court failed
to apply the correct legal standard under this court's decision
in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016),
and so the lower court addressed the merits of that argument.
Thus, we review de novo the district court's ultimate conclu-
sion that the defendants were entitled to judgment as a matter
of law.

### B. Legal Standards for Discrimination and Retaliation

Nicholson first claims that she was not reappointed to the
Asset Forfeiture position because of her sex, in violation of Ti-
tle VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*
After *Ortiz*, this court has entirely done away with the distinc-
tion between "direct" and "indirect" evidence and methods
of proof for Title VII discrimination claims. As we explained
in that case, "[e]vidence is evidence. Relevant evidence must
be considered and irrelevant evidence disregarded, but no ev-
idence should be treated differently from other evidence be-
cause it can be labeled 'direct' or 'indirect.'" *Ortiz*, 834 F.3d at
765. The proper standard on summary judgment for this

claim "is simply whether the evidence would permit a reasonable factfinder to conclude that [Nicholson's sex] caused" her reassignment. *Id.*

Nicholson's second claim is that her reassignment was retaliation for having made claims of discrimination in the past, particularly involving the episode with Officer Wilson. To survive summary judgment on a claim of unlawful retaliation, whether under Title VII or 42 U.S.C. § 1983, Nicholson "must produce enough evidence for a reasonable jury to conclude that (1) she engaged in a statutorily protected activity; (2) the [defendants] took a materially adverse action against her; and (3) there existed a but-for causal connection between the two." *Burton*, 851 F.3d at 695; see also *Smith v. Bray*, 681 F.3d 888, 899 (7th Cir. 2012) (abrogated on other grounds by *Ortiz*) (same legal standards apply under Title VII and § 1983).

### C. Sex Discrimination Claim

Nicholson argues that a reasonable jury examining the record could conclude that she was not reappointed to the Asset Forfeiture position because of her sex. We disagree. The record simply lacks any evidence to contradict the defendants' position that Skaggs was chosen over Nicholson because of the former's better interview performance. Since there is no admissible evidence that suggests the defendants' explanation was a pretext for sex discrimination, the defendants were entitled to summary judgment on this claim.

Nicholson's protests to the contrary are unpersuasive. First, there's no indication that the Rotation Policy was created specifically to target her because she's female. After all, more than twenty male employees were reassigned to patrol after not being retained in specialty positions under the Rotation

Policy. Second, Nicholson's argument that the interview process was a sham is not supported by any admissible evidence, but only by the feelings of another female officer who was unhappy about being excluded from the selection committee.[3] Third, her contention that Skaggs wasn't as good at the Asset Forfeiture job is irrelevant because the decision challenged was the *hiring* of Skaggs instead of Nicholson. The selection committee obviously didn't have future knowledge of how Skaggs would perform in the job; it could only make its decision based on the candidates' interviews. Skaggs' interview went better than Nicholson's, so he was hired. Without any evidence to the contrary, Nicholson cannot maintain a sex discrimination claim.[4]

### D. Retaliation Claim

Next, Nicholson claims that she didn't keep the Asset Forfeiture position because she made claims of discrimination against the Department relating to the surveillance by Officer Wilson. For similar reasons, this claim also fails. There is no

---

[3] What is more, the head of the selection committee, then-Captain Lisa Snow, was female and Nicholson's childhood friend. Snow has since been promoted to Assistant Chief of Police, the second-highest rank in the Department.

[4] Nicholson also argues that there is a pattern or practice of sex discrimination at the Peoria Police Department. However, she cites only her own claim and two other incidents over the course of several years. "In order to prove that the employer has engaged in a pattern or practice of discrimination, then, the plaintiff must show that there is regular, purposeful, less-favorable treatment of a protected group." *King v. Gen. Elec. Co.*, 960 F.2d 617, 623 (7th Cir. 1992). Three claims over almost a decade, isolated in nature and unrelated to each other, are insufficient to establish a pattern or practice of discrimination against women.

evidence that the selection committee chose Skaggs over Nicholson because Nicholson had made prior discrimination claims. Rather, the record demonstrates that Nicholson's poor interview caused her reassignment.

Nor does the chronology help Nicholson's case. The last charge of discrimination she filed in relation to the Wilson ordeal was on September 27, 2011, when she claimed that the City should not be paying Wilson's attorneys' fees to defend against her claims.[5] The selection committee decided to appoint Skaggs in October 2012. The passage of more than a year between protected activity and the adverse employment action is enough to "substantially weaken" a retaliation claim. *Burton*, 851 F.3d at 698 (six-month gap). And the filing of her subsequent lawsuit against Wilson doesn't fill the gap because it happened after the challenged decision. So, instead of facilitating an inference of retaliation, the timing actually harms Nicholson's case.

Moreover, federal courts intervene in these sorts of personnel disputes "only where 'an employer's reason for [an adverse action] is without factual basis or is completely unreasonable.'" *Id.* (quoting *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 646 (7th Cir. 2013)). Even if we didn't think that it was particularly smart for the selection committee to pick Skaggs based on the interview, it certainly wasn't irrational. And Nicholson doesn't dispute the facts relating to her interview. Thus, we will not second-guess the defendants' hiring decision in this case. We agree with the district court that the defendants were

---

[5] The City apparently paid the attorneys' fees because it was obligated to do so under its collective bargaining agreement with the police union.

entitled to summary judgment on Nicholson's retaliation claim.

### E. Motion to Disqualify Judge Mihm

Lastly, Nicholson takes issue with Judge Mihm's refusal to recuse himself and his decision to hear, and deny, her motion to disqualify him. Her argument is that Judge Mihm should be disqualified because he worked for the City of Peoria more than 40 years ago. To put it mildly, this is frivolous and we reject it.

A judge must disqualify himself from "any proceeding in which his impartiality might reasonably be questioned," 28 U.S.C. § 455(a), or when "he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy," *id.* § 455(b)(3). Judge Mihm has been a federal judge since 1982. He was last employed by the City of Peoria in 1972. Any suggestion that he is biased in favor of the City based upon his employment more than four decades ago is preposterous.[6] We need not spend any more time refuting

---

[6] At oral argument, Nicholson's counsel went so far as to say that Justice Kagan, for the remainder of her time on the Supreme Court, should have to disclose that she was once the United States Solicitor General. Apparently, the suggestion is that Justice Kagan's work on behalf of the federal government would make her potentially biased in favor of the government in all future cases. Our judicial system would hardly function if judges were potentially obliged to disqualify themselves in such situations. Counsel's suggestion is illustrative of the absurdity of Nicholson's argument.

it. Judge Mihm was well within his rights to decide the motion himself and to deny it.

### III. Conclusion

Nicholson has clearly experienced quite the ordeal in the past few years. The surveillance allegations against Officer Wilson, which we assume to be true, are quite unfortunate. But they do not have any bearing on the outcome of this case against the City and Chief Settingsgaard. Nicholson has not presented any admissible evidence that would permit a reasonable jury to conclude that she was reassigned to patrol because of her sex or her previous discrimination claims. Therefore, the district court correctly granted summary judgment to the defendants on those claims.

AFFIRMED