**Jamie OWENS, Plaintiff-Appellant,**

**v.**

**OLD WISCONSIN SAUSAGE COMPANY, INCORPORATED, Defendant-Appellee.**

**No. 16-3875**

United States Court of Appeals, Seventh Circuit.

Submitted May 30, 2017

Decided August 31, 2017

Janet L. Heins, Attorney, Heins Employment Law Practice, LLC, Mequon, WI, for Plaintiff–Appellant.

Kyle G. Borkenhagen, Anthony J. Resimius, Attorneys, Rohde Dales, Sheboygan, WI, for Defendant–Appellee.

Before WOOD, Chief Judge, and RIPPLE and ROVNER, Circuit Judges.

ROVNER, Circuit Judge.

Jamie Owens worked as an employee of Old Wisconsin Sausage Company (Old Wisconsin) from June 2011 until her termination in April 2012. She filed suit against Old Wisconsin alleging employment discrimination in that termination, including discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as a claim of retaliation under the Fair Labor

Standards Act (FLSA), 29 U.S.C. § 215(a)(3). The district court granted summary judgment in favor of Old Wisconsin on all claims, and Owens now appeals that judgment to this court.

Owens was hired as the manager of the Human Resources ("HR") Department, and was one of eight department managers at Old Wisconsin. She previously had worked as HR Manager at Lakeside Foods. Owens was the only female manager at Old Wisconsin, and reported to Karen Noble, the Vice President of HR at the corporate level, and Steve Harrison, the Vice President and General Manager. Owens was hired as a replacement for a male HR manager, Jeff Thiel. During her training, Thiel told Owens that during his employment at Old Wisconsin there tended to be a "boys club" which Owens understood to refer to some managers doing things their own way and excluding Thiel and the HR department from the decision-making process. Thiel also indicated that Old Wisconsin had hired Owens because she was female and that Noble believed that bringing in a female would help to evolve the culture of the company. The managers at Old Wisconsin were classified as either "Manager I" with a bonus potential of 15%, or "Manager II" with a 10% bonus potential. During her 10-month stint at Old Wisconsin, Owens was classified as a Manager II and her salary was the second lowest of the managers there.

While Owens was the HR manager, Matt Kobussen applied for an open position as a retail store supervisor at Old Wisconsin. He had similarly applied for a position and had been hired at Lakeside Foods when Owens was the human resources manager there. Owens was involved in the interview process at Old Wisconsin but did not disclose that she and Kobussen were in the midst of a six-year relationship. Although Owens denied in the

district court that she was living with Kobussen at the time he was interviewed and hired in 2011, the district court noted that Owens had testified under oath in a separate court proceeding in 2014 that she had lived with Kobussen from 2010 until "almost 2012" and had raised his son for five years. In a small claims court complaint which she stated under oath was true, she referred to her relationship with Kobussen as a 6-year relationship. The court determined that those statements should be taken as true under the doctrine of judicial estoppel, holding that Owens cannot attempt to prevail in those cases by arguing that she was in a relationship with Kobussen during that time period, and now seek relief in this case by arguing that she was not. Owens raises no legal attack on appeal to that judicial estoppel determination, and accordingly we will assume for this appeal that she was in fact in a long-term relationship with Kobussen at the time that he applied for a position at Old Wisconsin.

Owens discussed with Kobussen who would be his supervisor and other details of the position before he applied, and along with another manager Owens conducted Kobussen's first interview. She was not present for his second interview, but in conjunction with two other managers she participated in the decision to hire him. In September and early October of 2011, Owens was assigned supervisory responsibility for the retail store, which placed Kobussen directly under her supervision. She did not reveal to her employer her relationship with Kobussen at any time.

Tammy DeZwarte, a friend of Owens since high school who was in Owens' wedding, followed a similar path to Old Wisconsin as Kobussen. She was hired at Lakeside Foods when Owens was HR manager there, and hired at Old Wisconsin during Owens' tenure as HR manager at that company. Some employees complained

of preferential treatment by Owens regarding DeZwarte, and when Owens was questioned as to that relationship, she described DeZwarte as an acquaintance.

In November 2011, three different employees complained to Chuck Pfrang, the plant manager, that Owens and Kobussen were in a relationship and that there was a conflict of interest because Owens was involved in hiring Kobussen and was now his supervisor. Old Wisconsin had no policy prohibiting inter-employee dating, but had an informal policy to question supervisors in relationships with subordinates in order to avoid conflicts of interest. The policy was applied to both female and male supervisors in such relationships. Pursuant to that informal policy, once management was informed of a relationship between a supervisor and a subordinate, they would discuss the matter with the supervisor to learn the details of the relationship, and would take appropriate steps such as apprising the supervisor of problems which the relationship could cause in the workplace or altering the supervisory relationship where appropriate. Following those complaints by the employees, both Kobussen and Owens were asked whether they were in a relationship. Owens met with Harrison and Pfrang on November 28, 2011 to discuss the relationship rumors, and they informed Owens of the concerns raised by the three employees. At that meeting, Owens adamantly denied that she was in a relationship with Kobussen. When further questioned as to whether she had ever been in a prior relationship with Kobussen, Owens stated, "I'm not answering this, this is borderline sexual harassment." At that point, Harrison chose to embark upon a performance review of sorts, although the promised formal performance reviews had not been provided previously. He stated that her performance had been a "C" at best, characterizing her performance as mediocre and as failing to fulfill

the promise of the skill set identified on her resume and in her interview.

On approximately December 19, 2011, Harrison informed Owens that several employees had expressed concern about Kobussen's work performance and Owens' objectivity in addressing those performance problems, including that he showed poor leadership, did not work Saturdays, did not stock shelves, had personal hygiene issues, took numerous cigarette breaks during the day, came in late, and took an unpaid vacation day on a very busy store day. At that meeting, Owens again denied knowing Kobussen outside work.

Kobussen was also questioned by Pfrang regarding his relationship with Owens but he deflected the question, responding that he did not question Pfrang about Pfrang's spousal relationship. Although Kobussen remained employed with Old Wisconsin, Owens was terminated. The basis of the termination is the subject of dispute. During a quarterly meeting on February 9, 2012, Noble, Harrison and Pfrang initially determined that Owens was not a proper fit for the human resources position, and noted several problems observed by management with her professionalism and her ability to perform the duties of the position. The next day, Safety Manager David Streeter emailed Noble detailing his concerns with her abilities in Owens' position, noting her lack of the necessary knowledge of HR and of safety issues to adequately do her job, and her "rough" personality that made employees hesitant to approach her with issues. Harrison decided to terminate Owens, but upon learning that Owens' daughter was sick, postponed that decision and ultimately terminated her on April 13, 2012. The person hired to replace Owens was also female.

After the decision to terminate Owens, Old Wisconsin produced a memo that indicates its reasons for terminating Owens' employment, including that: false or misleading statements were made related to hiring practices and friendships that may have influenced hiring decisions; management was approached by employees with concerns with Owens' integrity and a lack of trust in HR actions; Owens often made statements of "fact" based on inadequate information, leading to additional investigation which changed the basis for the decision; Owens did not support many company policies and had commented on such to other employees; Owens had problems setting correct priorities and often created a crisis situation when calm reflection was required; and Owens had not developed interactive relationships with employees and was not approachable. Owens, however, argues that the memo with its reasons was never supplied to her at the time of her termination, and that the reason she was terminated was that she refused to answer questions about any relationship she had with Kobussen.

Owens alleges that her termination constituted unlawful discrimination and retaliation in violation of Title VII, and that it constituted improper retaliation under the FLSA. Owens points to a litany of additional actions by employees at Old Wisconsin as support for her Title VII and FLSA claims.

In both July and October 2011, Owens informed Harrison that she believed Old Wisconsin was in violation of the FLSA in failing to properly pay overtime rates to some employees. Owens asserted that Harrison became angry in the October meeting when she again raised the issue. According to Owens, Thiel had also identified the FLSA problem, but Old Wisconsin failed to correct it when he raised it as well.

Owens sets forth a plethora of other actions which she claims constitute discriminatory treatment. The problem is

that for most of those actions, there is nothing inherent in them that would allow an inference that they were related to her sex, and no evidence that other similarly-situated employees were treated differently or other reason to indicate they indicate sex discrimination. For instance, she complains that Pfrang suggested to her that she should lead the Weight Watchers program at work, which she interpreted as a reference to her weight and sex. But as the district court noted, her position as Human Resources Manager presumably would make her an appropriate person to turn to for an employee wellness program. Even absent that connection, however, the suggestion could be construed as a comment as to her weight (although that would be more likely if she were told to join rather than to lead such a program), but it would be speculation to conclude that the comment was a disparaging comment related to her sex. Similarly, she complains that after a meeting at work, Pfrang commented to her that a co-worker was dressed inappropriately, stating that his wife would have a real problem if she saw that much cleavage. Although that comment related to the attire of a female employee, there is no reason to consider that comment discriminatory or harassing. In fact, Owens responded by asking Pfrang if he would like her to address it but he declined that offer, thus recognizing that such issues fall within the purview of her role as human resources manager.

Owens additionally alleges other conduct of even more marginal relevance. For instance, she claims that she observed a male employee provide flowers to a female supervisor on her last day of work, and was told "don't worry, you're next, he'll butter you up because females are the ones he likes." She included no allegations that she ever received any flowers or unwanted solicitations from that male employee, or had any questionable contact with him at all. Owens also complains that after interviewing a man for warehouse manager, one of the male interviewers stated that he would question the man's character because the man was divorced, to which Owens replied that she was divorced and he then stated, "well, you're a woman."

Owens next complains that Pfrang commented in early 2012 that she was not dressed formally enough for an HR position, which she considers discriminatory because the male managers dressed casually. Owens does not identify those managers in the briefs nor their positions, and therefore we have no way to determine whether the allegedly differing dress code was related to the differing functions of, for instance, a warehouse manager as opposed to a human resources manager. Owens also has not compared her alleged dress code with that of the prior, male, human resources manager.

Finally, Owens also raised with a manager at Old Wisconsin her concerns with the implementation of the bonus system, which included bonuses given for specific examples of good work known informally as the "atta boy" bonus. Owens was troubled when a female employee failed to receive a bonus although she was more deserving of it than some male employees who received it. After Owens raised her concerns, that female employee was awarded the bonus.

As our court made clear in *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016), the correct standard on summary judgment in this employment discrimination case is simply whether the evidence would permit a reasonable factfinder to conclude that Owens' sex caused the termination, which is the adverse employment action asserted here. See also *Nicholson v. City of Peoria, Ill.*, 860 F.3d

520, 523 (7th Cir. 2017); *David v. Bd. of Trustees of Comty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017); *Cole v. Bd. of Trustees of Northern Ill. Univ.*, 838 F.3d 888, 899 (7th Cir. 2016). We have clarified that courts should not distinguish between "direct" and "indirect" evidence and apply distinct legal standards to such evidence. *Id.* Instead, we noted that "[e]vidence is evidence. Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled 'direct' or 'indirect.'" *Ortiz*, 834 F.3d at 765; *Nicholson*, 860 F.3d at 523. In determining whether the evidence would permit a reasonable factfinder to conclude that Owens' sex caused her termination, the burden-shifting framework of *McDonnell Douglas* remains relevant as a "means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases." *David*, 846 F.3d at 224; *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 500 (7th Cir. 2017). The district court recognized our guidance in *Ortiz*, and appropriately applied the correct standard.

█ As was set forth above, Owens points to myriad actions by the employer that she believes represent discriminatory treatment of her as a woman, including stating that she was told to dress more professionally, that bonuses were given to men and not women, that they suggested that she lead the Weight Watchers group, and that they asked her whether a female employee was dressed inappropriately because the employee was revealing cleavage. Many of those allegations are unrelated to the adverse action she alleges here, which is her termination. Although such evidence is arguably relevant in determining that the employer treated women differently than men and therefore might

have treated her differently in the termination decision as well, many of the allegations she sets forth do not allow a reasonable inference of such differing treatment.

Owens' sex discrimination claim, however, rests on her contention that her refusal to respond to "discriminatory questions" about any relationship she had with Mr. Kobussen led to her termination. Owens has failed to present evidence that would allow a reasonable factfinder to conclude that those questions and her subsequent termination were because of her sex. Although alleging that she received different treatment than male supervisors, Owens presents no evidence of a male supervisor who was in an undisclosed relationship with a subordinate and was not questioned as to that relationship. In her deposition, she identified three supervisors or managers in relationships with other employees, but by her own description those situations are not comparable to hers. For the first person, she acknowledges that management was aware of the relationship. The second person was never the supervisor of the woman he was dating, and in fact they worked in different facilities, and Owens was unaware as to whether he had been involved in her hiring, nor did Owens know whether they ever attempted to hide that they were dating. Finally, according to Owens' deposition, the third supervisor she identified tried to hide the relationship and he was questioned about it by his supervisor Steve Wakefield, who was the First Shift Production Manager. Old Wisconsin presented evidence that at least two supervisors, both of whom were male, were questioned about their relationships when dating subordinates. Thus according to Owens' own deposition and the unrebutted evidence by Old Wisconsin, male supervisors in relationships with subordinates were questioned regarding those relationships. Therefore, rather than demonstrating that similarly-situated individuals were

treated differently, the evidence indicated they were treated similarly. Owens points out that the person with whom she had been in a relationship, Kobussen, was questioned and did not answer, but his situation is not comparable. First, he deflected the question rather than outright refusing to answer. But much more importantly, he was the subordinate not the supervisor. Owens was the HR manager who ended up in a supervisory role over Kobussen, and therefore she was the one in a position to give preferential treatment (and in fact, the inquiry began because of reports of a conflict of interest on her part by other employees). In addition, Owens was one of the two people who actually made the hiring decision, and despite the clear potential for a conflict of interest, did not disclose that she had a significant personal relationship with Kobussen at the time the hiring decision was made. Owens presented no evidence that Old Wisconsin had failed to question male managers when faced with evidence of similar conflicts. Nor are the questions themselves discriminatory. In fact, the questions address an issue of legitimate interest to an employer. The potential for a personal relationship between a supervisor and a supervisee, or a hiring manager and an interviewee, is apparent. Employers frequently address such potential conflicts by requiring recusal from hiring decisions or at least acknowledging the potential bias in that person's recommendation, or by transferring employees so as to not fall under the supervision of their partner. Owens has presented no basis to believe that she was questioned about the relationship because she was a woman. Accordingly, the district court properly granted summary judgment on this claim because Owens has failed to produce sufficient evidence to allow a reasonable factfinder to conclude that her sex caused her termination.

Her retaliation claim is similarly fated. Owens argues that Old Wisconsin terminated her for asserting a claim of sexual harassment under Title VII. The basis for her claim is that when she was questioned as to her relationship with Kobussen, she refused to answer and responded that she believed the questions to be "borderline sexual harassment." A retaliation claim arises under Title VII when an employee engages in an activity protected under that statute and, as a result, suffers an adverse employment action. *Ferrill*, 860 F.3d at 501. A protected activity can include some step in opposition to a form of discrimination protected under the statute, and the employee needs only a good-faith and reasonable belief that the conduct she is opposing is unlawful. *Id.* Here, Owens has not presented sufficient evidence of a good-faith and reasonable belief that the questioning was unlawful sexual harassment. Owens' own deposition testimony indicates that she was aware of a number of male supervisors in relationships with subordinates, but that in the only situation in which the relationship was not already known to management, the supervisor was questioned by management as to that relationship once an inkling of the relationship arose. Moreover, such relationships pose a conflict of interest with a potential for an adverse impact on the workplace. Owens acknowledges that several employees complained of such a conflict of interest in her relationship with Kobussen. In light of such complaints and the practice of Old Wisconsin with the other supervisors identified by Owens, there is no evidence that her belief that the questioning was sexual harassment had a good-faith basis, and even if it did, it was not a reasonable belief. Accordingly, she has failed to allege evidence of retaliation under Title VII, and the district court

properly granted summary judgment on that claim as well.

■ Finally, Owens also contends that the termination in this case violated the FLSA, asserting that she was terminated because she reported potential FLSA violations to Old Wisconsin. In order to survive summary judgment, Owens must produce evidence of a causal link between the protected expression and her termination. *Kasten v. St. Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012). There are facts in the record indicating that the FLSA complaint was not a cause of the termination, in that Owens asserted that she made the same complaint as that made by Thiel, who was not fired for the complaint, and that she made it on multiple occasions—July and October 2011— temporally unconnected to the termination. In fact, according to Owens, she received a bonus based on her work performance in November 2011, after those FLSA reports were made to her employer.

The only arguable evidence that the FLSA reports played a role in the termination is in the employer's termination memo. That memo from her employer reciting the basis for the termination includes allegations that Owens failed to support company policies and commented on such to other employees, that she frequently commented about employee issues before all facts were known, and that she often made statements of fact with inadequate information leading to additional work to confirm actual facts. Owens argues that those grounds encompass her claims to Old Wisconsin of FLSA violations, but does not dispute Old Wisconsin's contention that she failed to offer solutions to those FLSA problems that she identified. Moreover, those statements in the memo relate to the manner in which she communicated and analyzed issues, and her professionalism with management and other employees, which are distinct from any FLSA reports to her employer. But regardless of that evidence, the deeper and insurmountable problem is that Owens repeatedly and consistently, in this court and in the district court, argued that the reason for her termination was her failure to answer the questions posed to her regarding her relationship with Kobussen. In fact, she argues that the memo provided by her employer with the reasons for her termination was an after-the-fact attempt at obfuscation of the actual reason, which was the questioning about her relationship. Accordingly, under her own argument, there was no causal link between her FLSA allegations and her termination, and the district court properly granted summary judgment.

The decision of the district court is AFFIRMED.