In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1270

GLORIA D. TERRY,

*Plaintiff-Appellant,*

*v.*

GARY COMMUNITY SCHOOL CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 15-cv-00129 — **John E. Martin**, *Magistrate Judge.*

ARGUED NOVEMBER 29, 2018 — DECIDED DECEMBER 14, 2018

Before FLAUM, RIPPLE, and MANION, *Circuit Judges.*

FLAUM, *Circuit Judge.* For thirty-five years, plaintiff-appellant Gloria D. Terry worked as a teacher and an administrator for defendant-appellee Gary Community School Corporation (the "District"). At the end of the 2013–2014 school year, the District closed the elementary school where Terry served as the Principal because of declining enrollment. In turn, the District reassigned her to serve as the Assistant Principal at an-

other elementary school. From Terry's perspective, this reassignment was a demotion. Additionally, the District also picked a male employee over Terry for a separate promotion, even though Terry had earned the highest ranking of all the applicants from the interviewers.

These events motivated Terry to bring this lawsuit, alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and the Fourteenth Amendment via 42 U.S.C. § 1983; retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a); unequal pay in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1); and a violation of the Indiana Open Door Law, Ind. Code § 5-14-1.5-1 *et seq*. Only Terry's federal claims are at issue on appeal. The parties consented to referral to a magistrate judge who granted summary judgment in favor of the District on Terry's federal claims. Terry appeals that decision, and we affirm.

## I. Background

In August 1980, Terry began her career with the District as a teacher. Twenty-two years later, in August 2002, the District promoted Terry to Principal of Brunswick Elementary School. She remained in that position until the end of the 2013–2014 school year, when the District closed the school.

Brunswick Elementary was one of several schools the District closed at the end of the 2013–2014 school year due to declining enrollment. These closings meant the Board of School Trustees (the "Board") had to decide whether to reassign employees from the closed schools to any positions at the schools that remained open. To that end, the Board met on July 22, 2014, and it considered personnel recommendations from the

District's Superintendent, Dr. Cheryl Pruitt. The Board approved Dr. Pruitt's recommendation that Terry serve as Assistant Principal of Jefferson Elementary School, pending enrollment of at least 575 students; that William Roberts serve as Principal of Watson Boys Academy; and that Marcus Upshaw serve as Assistant Principal of West Side High School. But, the Board did not approve Dr. Pruitt's recommendation that Gina Ellison serve as Principal of Marquette Elementary School.

Two days after the Board's meeting, the District advertised an opening for the position of Principal at Marquette Elementary. The posting noted an interview requirement. Several candidates, including Terry, interviewed for the position. Terry earned the highest ranking from the Interview Committee; but, on August 13, 2014, the District notified Terry that it did not select her for the position.

As it turned out, Dr. Pruitt never considered the Interview Committee's rankings. Instead, she recommended Sheldon Cain to fill the position even though Cain had not interviewed nor applied for the position. What distinguished Cain from the other candidates was his recent experience working at Marquette Elementary. During the 2013–2014 school year, when the Principal of Marquette Elementary had taken time off to recover from an illness, Cain served as the Interim Principal. And before that, Cain was the Assistant Principal of Marquette Elementary.

In October 2014, Terry filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"), stating that she faced employment discrimination on the basis of her sex because she was demoted, passed over for a promotion, and paid less, in violation of Title VII and the

Equal Pay Act. The District's Human Resources Director, Willie Cook, sent a response to the EEOC. The District denied discriminating against Terry and explained that it had to close Brunswick Elementary and four other schools in July 2014 due to declining enrollment. Rather than laying off Terry, the District reassigned her to help the Principal of Jefferson Elementary. Notwithstanding the reassignment, the District did not change Terry's salary. Finally, the District explained it chose Cain to serve as Principal of Marquette Elementary because he "had served as Assistant Principal there since 2009, Acting Principal for 2012–2013, Interim for 2013–2014, and was familiar with the school's operation and population."

For two weeks in January 2015, Terry served as the Assistant Principal of Jefferson Elementary until the District reassigned her to serve as the Assistant Principal of Marquette Elementary. She remained in that role until she retired at the end of the 2014–2015 school year.

Although Terry's responsibilities changed between her role as Principal of Brunswick Elementary and her roles as Assistant Principal of Jefferson Elementary and then as Assistant Principal of Marquette Elementary, throughout her time serving in those three roles, she earned the same salary ($84,308) and she received the same benefits. Nevertheless, Terry took issue with the fact that two male principals, Cain and Roberts, received higher salaries than she did. Cain and Roberts each received $85,986 during the 2013–2014 school year. Terry did not file anything with the Board requesting an increase in salary; however, she discussed her concerns with Cook.

Terry learned from Human Resources that for several years, the District had been operating under a salary freeze,

meaning the District could not increase the salary for a given position. In his deposition, Cook explained that the salary for the Principal of Marquette Elementary was frozen at $85,986; so if Terry had been selected for that role, she would have received that salary.

Dr. Pruitt sent Terry a letter, dated February 25, 2015, advising Terry that the Board voted the day before not to renew her contract as an administrator for the District for the 2015–2016 school year. This prompted Terry to retire because "if [she] didn't retire then, [she] would lose all the benefits of an administrator." Accordingly, on April 2, 2015, Terry sent a resignation letter to inform the Board and the District that her last day of work would be June 30, 2015.

After receiving the EEOC's right-to-sue letter, Terry filed her initial complaint in this action on April 2, 2015. Soon thereafter, she filed an amended complaint and moved for partial summary judgment on her Indiana state-law claim. The district court granted Terry's motion. Approximately one month later, on August 17, 2015, Terry filed a second amended complaint, which is the operative complaint. Then, the parties consented to the exercise of jurisdiction by a magistrate judge for all further proceedings pursuant to 28 U.S.C. § 636(c). The District moved for summary judgment on Terry's remaining federal claims. On January 8, 2018, the magistrate judge granted the motion. This appeal followed.

## II. Discussion

We review the grant of summary judgment de novo. *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 628 (7th Cir. 2018). Summary judgment is appropriate "if the movant shows that

there is no genuine dispute as to any material fact and the mo-
vant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a). We draw all reasonable inferences for the nonmoving
party, and we view the record in the light most favorable to
the nonmoving party. *Barbera*, 906 F.3d at 628. We may affirm
the grant of summary judgment on any ground supported in
the record, so long as the parties adequately presented the is-
sue in the district court and the nonmoving party had an op-
portunity to contest it. *O'Brien v. Caterpillar Inc.*, 900 F.3d 923,
928 (7th Cir. 2018).

### A. Discrimination Claims

Title VII makes it unlawful for an employer to discrimi-
nate against any employee on the basis of sex. 42 U.S.C.
§ 2000e-2(a)(1); *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir.
2018). The critical question on summary judgment is whether
Terry presented evidence that would permit a reasonable fact-
finder to conclude that the District took a materially adverse
employment action against Terry because of her sex. *See Bar-
bera*, 906 F.3d at 629. Although the oft-cited burden shifting
framework from *McDonnell Douglas Corporation v. Green*, 411
U.S. 792 (1973), provides "a means of organizing, presenting,
and assessing circumstantial evidence," *David v. Bd. of Trs. of
Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017), we
must consider the evidence as a whole in deciding whether to
grant summary judgment, *see Ortiz v. Werner Enters., Inc.*, 834
F.3d 760, 765 (7th Cir. 2016).

Terry argues the District engaged in sex discrimination
both by demoting her from Principal of Brunswick Elemen-
tary to Assistant Principal of Jefferson Elementary and by pro-
moting Cain instead of her to serve as Principal of Marquette
Elementary. If Terry can show that the District demoted or

failed to promote her because of her sex, the burden shifts to the District to present a legitimate and nondiscriminatory reason for the adverse action, and if the District can make that showing, the burden shifts back to Terry to create a triable issue of fact that the proffered reason was pretextual. *Barbera*, 906 F.3d at 629.

### 1. Demotion Theory

Terry insists that the demotion from Principal of Brunswick Elementary to Assistant Principal of Jefferson Elementary constitutes an adverse action because it resulted in a lesser title, diminished job responsibilities, and less prestige. The District disputes that the reassignment was an adverse action given that Terry kept her same pay and benefits.

An employer's action is "materially adverse" if it is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *James v. Hyatt Regency Chi.*, 707 F.3d 775, 782 (7th Cir. 2013) (quoting *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1120 (7th Cir. 2009)). But, a change in pay and benefits is not a prerequisite for establishing that an employer engaged in a materially adverse action. *See Nagle*, 554 F.3d at 1119–20. Examples of qualifying actions include: (1) reductions in compensation, fringe benefits, or other financial terms of employment, including termination; (2) preventing an employee from using the skills she developed and in which she is trained, such that those skills atrophy and her long-term career prospects are reduced; or (3) changing an employee's work conditions "in a way that subjects h[er] to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in h[er] workplace environment." *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) (quoting *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002)).

While the title of "Principal" is more prestigious than that of "Assistant Principal," the magistrate judge found that the parties had agreed that many of the duties and required skills of principals and assistant principals are, in fact, the same. On appeal, Terry makes a conclusory assertion that the transfer "severely diminished her job responsibilities," but she does not present any evidence to support this point. Nor does Terry show that her long-term career prospects were hampered by the change, that the new work environment was humiliating, or the like. Therefore, as the magistrate judge noted, there is reason to doubt that Terry suffered an adverse employment action when the District transferred her to serve as Assistant Principal of Jefferson Elementary.

Deciding whether Terry can make that showing is unnecessary, though. Even assuming this change in position constitutes a material adverse action, Terry did not marshal any evidence to raise a factual dispute that the District had a discriminatory purpose for taking this action. The record supports a finding that the District transferred Terry because Brunswick Elementary closed. Terry offers no evidence or argument to suggest that this reason was pretextual. As such, the District is entitled to summary judgment on Terry's theory that the District discriminated against her by demoting her.

### 2. *Failure-to-Promote Theory*

In addition to the demotion, Terry challenges the District's decision to appoint a male instead of her to fill the position for Principal of Marquette Elementary. We have held that an employer's decision not to promote an employee is discriminatory when the employee establishes: (1) she was a member of a protected class; (2) she was qualified for the position; (3) the

employer rejected her application; and (4) the employer pro-moted someone outside the protected class who was not more qualified for the position. *Henderson v. Shulkin*, 720 F. App'x 776, 781 (7th Cir. 2017) (citing *Riley v. Elkhart Cmty. Schs.*, 829 F.3d 886, 892 (7th Cir. 2016)).

The District does not dispute that Terry can establish these elements. Instead, the District reiterates the same arguments it made in its response to Terry's EEOC charge: The decision was not sex-based and the District chose Cain for that role be-cause of his experience working at Marquette Elementary. Terry contends the District's sex-neutral reason for hiring Cain is pretextual. To support this argument, she relies on the chronology of events—the Board rejected Dr. Pruitt's nomina-tion of a female candidate for the position; Dr. Pruitt ignored the Interview Committee's analysis, which gave the highest ranking to a female candidate; and then the Board approved Dr. Pruitt's nomination of a male candidate. Terry believes this sequence of events reveals three lies by the District: (1) ex-perience working at Marquette could not have been very im-portant to the District, otherwise it would have nominated Cain initially, not Ellison; (2) Cain could not have been the "best candidate" because he was not a candidate at all—he did not apply for the position; and (3) interviews were not "required" to apply for the position because the District se-lected Cain and he never interviewed.

We do not agree that the chronology of events alone is ev-idence that the District lied when it said it picked Cain for the role because of his experience working at Marquette Elemen-tary. There is no information about how the District typically seeks to fill vacant positions—whether a formal interview and application process is required, whether Dr. Pruitt makes

nominations to the Board independent of any such process, or whether Dr. Pruitt is required to review the Interview Committee's conclusions before nominating a candidate. Moreover, there is no information about why Dr. Pruitt first nominated Ellison, why the Board rejected Ellison as a candidate, why Human Resources responded to the rejected nomination by posting the position for Principal of Marquette Elementary, when and how the District began considering Cain as a candidate, why Dr. Pruitt did not consider the Interview Committee's findings, and why Dr. Pruitt did not nominate Terry. Without any such context, we have no basis to conclude that a candidate's experience was not important to the District, that one could not be a candidate without interviewing or formally applying, and that Cain was not the best candidate according to the District because of his experience. Consequently, we hold that Terry has not established pretext here.[1] Terry's claim that the District discriminated against her on the basis of her sex by failing to promote her does not survive summary judgment.

---

[1] In her opening brief on appeal, Terry briefly mentions that instead of assigning her to serve as Assistant Principal of Jefferson Elementary, the District could have transferred her to serve as Assistant Principal of West Side High, and that Terry believes a reassignment from Principal of Brunswick Elementary to Assistant Principal of West Side High would have been a lateral move. But Terry did not raise this as part of her failure-to-promote claim, and the District did not address this point in its response brief. Furthermore, Terry does not refer to the District's decision to appoint Upshaw to serve as Assistant Principal of West Side High instead of her in her reply brief. Regardless of whether waiver applies, Terry could not prevail on such a theory of discrimination because she has not shown that she was qualified for the West Side High position, that she applied for the position, or that Upshaw was not better qualified for the position than she was. *See Henderson*, 720 F. App'x at 781.

Terry also brings a discrimination claim under § 1983. We evaluate employment discrimination claims brought under § 1983 with the same standards we use in employment discrimination claims brought under Title VII. *Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1036 (7th Cir. 2003). Thus, for the same reasons Terry's Title VII discrimination claim does not prevail, her § 1983 discrimination claim also does not survive summary judgment.

We affirm the grant of summary judgment on Terry's discrimination claims under Title VII and § 1983.

### B. Retaliation Claim

"A retaliation claim arises under Title VII when an employee engages in an activity protected under that statute and, as a result, suffers an adverse employment action." *Owens v. Old Wis. Sausage Co.*, 870 F.3d 662, 668 (7th Cir. 2017). The parties do not dispute that Terry engaged in statutorily protected activity by filing a charge of discrimination with the EEOC or that the District took an adverse employment action against Terry by deciding to not renew her contract. What the parties dispute is the existence of a causal connection between Terry's activity and the adverse action.

Terry contends the District terminated her in retaliation for her protected activity. She notes that the District terminated her less than one month after she received her right-to-sue notice and four months after she had filed her charge of discrimination. Terry argues that the temporal proximity between these events, especially when considered in the greater context of her career with the District—a thirty-five-year employment history with no disciplinary issues, and with con-

sistently positive performance evaluations—supports an inference of retaliation. *See Lang v. Ill. Dep't of Children & Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004) ("Close temporal proximity provides evidence of causation and may permit a plaintiff to survive summary judgment provided that there is also other evidence that supports the inference of a causal link." (citation omitted)); *Lalvani v. Cook County*, 269 F.3d 785, 790 (7th Cir. 2001) ("When an adverse employment action follows close on the heels of protected expression, and the plaintiff can show that the person who decided to impose the adverse action knew of the protected conduct, the causation element of the *prima facie* case is typically satisfied.").

The District insists it did not retaliate against Terry, noting the undisputed evidence that the District had to close schools due to declining enrollment and that these closures forced the District to downsize its administration. The District also clarifies that it sent Terry a form letter that it sent to "numerous administrators"; however, the District does not cite evidence in the record to support that point. There is evidence that the District sent Cain a letter warning him that the District was "considering a decision not to renew [his] contract as an Administrator"; but that is not the same as the letter Terry received, informing her that "the Board … voted … to not renew [her] contract." Relatedly, the District explains that it sent these form nonrenewal letters because it was required to do so under state law. The magistrate judge decided that the District waived this last point by raising it for the first time in is reply brief. Terry does not contend that waiver bars the District from raising this argument on appeal.

The state law that the District refers to is Indiana Code § 20-28-8-3(a); it provides: "Before March 1 of the year during

which the contract of … a principal … is due to expire, the governing body of the school corporation … shall give written notice of … refusal to renew the individual's contract for the ensuing school year." This language supports the District's argument that state law dictated when the District had to send the nonrenewal letter to Terry. And the record further supports the District's argument that it did not renew Terry's contract because of the financial crisis, school closures, and downsized administration.

Given that "there are reasonable, non-suspicious explanations for the timing of [the nonrenewal letter]," that timing, even when combined with Terry's positive employment history, is not enough to create a dispute of material fact as to whether the District retaliated against Terry. *See Milligan-Grimstad v. Stanley*, 877 F.3d 705, 711 (7th Cir. 2017) (quoting *Morgan v. SVT, LLC*, 724 F.3d 990, 998 (7th Cir. 2013)). We affirm the grant of summary judgment on this claim.

## C. Equal Pay Act Claim

The Equal Pay Act prohibits employers from discriminating between its employees by paying an employee lower wages than the employer pays an employee of the opposite sex. 29 U.S.C. § 206(d)(1). An employee establishes a prima facie claim under the Act by demonstrating a difference in pay despite having a job that requires "equal skill, effort, and responsibility" as the comparator and a job that is performed under similar working conditions to the comparator. *Lauderdale v. Ill. Dep't of Human Servs.*, 876 F.3d 904, 907 (7th Cir. 2017) (quoting *King v. Acosta Sales & Mktg., Inc.*, 678 F.3d 470, 474 (7th Cir. 2012)). If the employee makes this showing, the burden of proof shifts to the employer to prove some neutral factor that explains the difference in pay. *Id.* The Act provides

four exceptional circumstances when an employer has a permissible basis to pay an employee less than an employee of the opposite sex: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Id.* (citing 29 U.S.C. § 206(d)(1)).

On appeal, Terry argues that her position as Principal of Brunswick Elementary was equivalent to Cain's position as Interim Principal of Marquette Elementary and to Robert's position as Principal of Watson Boys Academy. The District does not challenge Terry's choice of comparators. Instead, the District maintains that the undisputed evidence shows that the combination of its pay scale and the salary freeze determined employees' salaries; sex was not a factor.

Terry argues the District waived its "other than sex" affirmative defense by raising it for the first time in its reply brief before the district court.[2] We disagree. In its opening brief on summary judgment, the District refers to the statute's exception for circumstances when the pay disparity is based on a factor other than sex. Specifically, the District quotes the portion of *Smith v. Allstate Insurance Corp.*, 24 F. Supp. 2d 870, 879 (N.D. Ill. 1998), which contains a block quotation of 29 U.S.C. § 206(d)(1), which outlines the "other than sex" exception. The District then argues that Terry "cannot prove she was discriminated in regards to Equal Pay" because the District "had a pay scale for its employees," and "Terry was at the

---

[2] The District did not respond to Terry's waiver argument and so it has waived any counter-arguments it might have raised in response to this point. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond to an argument raised by the opposing party on appeal results in waiver).

high end of the pay scale even though she was not at the very top." The District further explains that Cain received a salary increase when the District promoted him from Assistant Principal to Principal in order to "compensate[] [him] for the additional duties." These arguments were "other than sex" defenses even though the District did not label them as such. The District did not fail to raise this affirmative defense in its opening brief on summary judgment.

While it is true that the District did not explicitly refer to the "salary freeze" in addressing Terry's Equal Pay Act claim in its opening brief on summary judgment, the District did discuss the salary freeze in its statement of material facts. It stated that Terry's salary was frozen at $84,308 and that "[t]he district froze salaries several years prior to the closing of [Brunswick Elementary]." It is clear from the District's opening brief that the crux of the District's defense in this case was the District's financial crisis, of which the salary freeze was a part. This was not a new theory that the District raised for the first time on appeal. As a result, we do not conclude that the District waived its right to rely on the salary freeze as supporting its "other than sex" affirmative defense. *See River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1172 (7th Cir. 1998) (holding waiver barred plaintiff from presenting issue on appeal where plaintiff did not raise that same issue before the district court).

Terry also argues that deposition testimony from Cook and Dr. Pruitt show that her salary *could* have been increased and that the District simply *elected* not to increase her salary, even though it fell below the salaries of her male peers. Based on this testimony, Terry believes she has raised a dispute of

material fact as to whether the District paid her less than Cain because of a factor other than sex. We disagree.

Cook's deposition testimony provides a counterfactual: If Terry had become Principal of Marquette Elementary instead of Cain, she would have received $85,986. In other words, whoever served as Principal of Marquette Elementary was entitled to receive $85,986 because the salary freeze fixed the salary for that position at that amount. Dr. Pruitt's testimony does not undermine the idea that the salary freeze governed the amount the District could pay an employee; she simply responded to a question about how she would have responded, had she known about the pay disparity affecting Terry:

> Q: If you had learned about that disparity earlier, would you have done something to correct it?
>
> A: I would have attempted to do something to correct it. Now, what I do know is that … there were other administrators in the district where the salaries are not aligned . … So what I did do was pull out the salary schedule to even try to understand that . … What I was told at that time was that historically the superintendent could just select what the amount would be to pay someone. That may have even happened to myself. But I didn't know, from what I can remember.

Dr. Pruitt's deposition testimony was aspirational—it effectively stated that she would have *tried* to do *something* to pay Terry more. She did not offer any concrete actions she would

have (or could have) taken to remedy the pay disparity. In fact, she admitted that she was previously aware of some pay disparity and that what she did in response was "try to understand" the salary schedule. She did not suggest that she did (or could have) eliminated that pay disparity.

Drawing reasonable inferences in favor of Terry, we can infer that it was possible for Dr. Pruitt to try to increase Terry's salary. However, there is nothing from which we may reasonably infer that there were ways to circumvent the salary freeze and that because the District did not take such measures, the District was simply choosing not to increase Terry's salary. We therefore do not interpret Dr. Pruitt's testimony as creating a triable issue of fact about whether the salary freeze prevented the District from raising salaries.

The record makes clear that when the salary freeze went into effect, the Principal of Brunswick Elementary earned $84,308 and the Principal of Marquette Elementary earned $85,986. Those salaries remained frozen throughout the 2013–2014 school year. And the record supports the inference that the differences in pay between the two positions was historical (dating back to the start of the salary freeze) rather than the product of the District's decision to award one employee more than the other—much less a product of the District's decision to award a male employee more than a female employee. Consequently, the District carried its burden of proving that a factor other than sex is the reason for the difference in pay.

Terry's reliance on Roberts, the Principal of Watson Boys Academy, as a comparator also does not advance her Equal Pay Act claim. Although Cook did not restate his counterfac-

tual in terms of Roberts and the position of Principal of Watson Boys Academy, the same evidence that led to the conclusion that the difference in salary between Terry and Cain was based on the salary freeze (and not based on sex) supports the same conclusion regarding the difference in salary between Terry and Roberts.

We affirm the grant of summary judgment as to Terry's claim under the Equal Pay Act.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.