**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 27, 2019[*]
Decided March 8, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 18-2258

| | |
|---|---|
| RHONDA COTTON, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 16-CV-1202 |
| | |
| MILWAUKEE AREA TECHNICAL | David E. Jones, |
| COLLEGE DISTRICT BOARD OF | *Magistrate Judge.* |
| DIRECTORS, | |
| *Defendant-Appellee.* | |

## O R D E R

Rhonda Cotton, an African-American employee at the Milwaukee Area Technical College, applied for several promotions. When the College did not select her, she sued for race discrimination and retaliation. A magistrate judge entered summary judgment for the College. Cotton now asserts that he should have given her more time to develop the record before deciding the case. Because Cotton never asked the magistrate judge

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

for more time to conduct discovery, and because she does not explain why the information that she sought was unavailable and necessary to establish a dispute of material fact, we affirm the judgment.

The College hired Cotton as a part-time instructor in 2001. (As of 2014 she is also a full-time, limited-term educational assistant.) After 12 years in that role, she applied for full-time positions including student service specialist, educational assistant, instructor, and office technology instructor, but she was not selected for these jobs. Rather, the College hired other candidates, changed the qualifications for the positions for which she applied, or eliminated the positions entirely. Cotton maintains that she was the best candidate for the positions based on the information she gathered from publicly available finance, personnel, and operations records and from her familiarity with her coworkers, though she acknowledges that she does not know all of the other candidates' qualifications.

After exhausting her administrative remedies, Cotton sued the College for racial discrimination and retaliation (for filing an employment discrimination charge in 2003) under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2(a), 2000e-3. The parties consented to the jurisdiction of Magistrate Judge Jones. *See* 28 U.S.C. § 636(c).

During discovery, Cotton's counsel developed a conflict of interest and withdrew from the case. The magistrate judge held a hearing to explain Cotton's options to her, and Cotton said that she would "continue pro se." Later in the hearing, she explained that she "[didn't] have a choice" because her counsel had not recommended a new lawyer, and she doubted she could find one before her deposition "in a couple weeks."

The magistrate judge also instructed Cotton on discovery deadlines. He said that he was "open to modifying whatever deadlines [were] on the books" to allow for adequate discovery and that he generally "[doesn't] require a whole lot of writing" for motions about discovery disputes. He also offered to extend discovery if Cotton found new counsel. Finally, the magistrate judge advised Cotton that the College likely would file a motion for summary judgment to which she would be "expected to respond."

About two weeks later, on the date discovery was scheduled to close and Cotton was scheduled for her deposition, Cotton asked for time to obtain a lawyer, and the magistrate judge denied her request. He observed that the case "[had] been around for [a while]" (almost a year and a half at that point). Because Cotton began compiling a record when she was counseled and because her case was "relatively straightforward,"

he reasoned, she could continue litigating on her own. The magistrate judge explained to Cotton that she did not have a right to a lawyer in a civil case and that he could not "put this case on hold" any longer. Still, he delayed the discovery deadline three more weeks so that the College could depose her, and he advised Cotton to continue looking for a lawyer in the meantime. He also set a new deadline for summary judgment motions and scheduled an oral argument.

The College moved for summary judgment. It attached to its motion a copy of Civil Local Rules 7 and 56, which instructed Cotton on how to oppose the motion. Cotton responded with a "Motion to Request a Jury Trial," in which she contended that she could produce witnesses and documents at trial that would support her claims. The magistrate judge held a hearing, at which he advised Cotton that her filing "didn't have the detail and specificity … for [him] to conclude that a reasonable juror could find discrimination." "[T]hat's why … I am requesting a lawyer," Cotton responded, and she again asserted that discrimination was behind the College's failure to promote her. The magistrate judge expressed his sympathy with Cotton, adding that he understood why she would think that it is "not a fair system," given that she was unrepresented during a "critical phase" of this suit. Nevertheless, he concluded, Cotton needed admissible evidence to survive summary judgment, and the record did not contain evidence that the College discriminated or retaliated against her. Accordingly, he granted the College's motion.

Cotton, with counsel on appeal, argues narrowly that the entry of summary judgment was premature because the parties had not yet completed discovery. She asserts that the record lacked the finance, personnel, and operations records and more than 600 pages of other documents from her EEOC filings that she previously had shared with the College. Her motion for a jury trial, she adds, notified the magistrate judge that she needed more time for discovery, even if it did not formally comply with the affidavit requirement in Federal Rule of Civil procedure 56(d). The College argues that Cotton never requested more time for discovery, never submitted an affidavit explaining why she needed more discovery, and even now has never suggested how she was prejudiced.

We agree with the College and affirm the entry of summary judgment for two reasons. First, Cotton never asked for more time to conduct discovery. We review a decision to deny additional discovery for an abuse of discretion. *See Helping Hand Caregivers, Ltd. v. Darden Restaurants, Inc.*, 900 F.3d 884, 890 (7th Cir. 2018). A district court does not abuse its discretion by ruling on a motion for summary judgment at the

close of discovery when the nonmovant does not say that she needs more time. *Stevo v. Frasor*, 662 F.3d 880, 886 (7th Cir. 2011). At most, Cotton asserted in her "motion for jury trial" that she could produce evidence at trial and that she wanted time to find new counsel. But even reading the record in her favor, she never asked for more time for discovery or, importantly, identified what discovery she needed. The magistrate judge did not abuse his discretion in denying a request that was never made.

The parties dispute whether Cotton needed to file an affidavit in support of a request for more time under Federal Rule of Civil Procedure 56(d). That rule states: "If a nonmovant shows by affidavit or declaration that … it cannot present facts essential to justify its opposition [to summary judgment], the court may … allow time … to take discovery." Here, the magistrate judge expressed that he was willing to entertain informal discovery motions and adjust the deadlines. We might consider whether the judge waived the affidavit requirement. *See Woods v. City of Chicago*, 234 F.3d 979, 990 (7th Cir. 2000). But because Cotton did not ask to delay summary judgment for further discovery in the first place, the issue of her technical compliance with Rule 56(d) is beside the point.

Second, we affirm the judgment because Cotton has not shown that she was prejudiced. Before vacating an entry of summary judgment due to an undeveloped record, we require "a clear showing of actual and substantial prejudice." *Stevo*, 662 F.3d at 886. To succeed on her underlying claims, Cotton needed to put forth admissible evidence that, taken as a whole, would enable a reasonable juror to conclude that (1) she is a member of a protected class or filed a charge against the employer; (2) she was qualified for the position; (3) the employer did not promote her; and (4) the employer promoted someone who was outside of the protected class or had not filed a charge and who was not more qualified. *Terry v. Gary Cmty. Sch. Corp.*, 910 F.3d 1000, 1006 (7th Cir. 2018); *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 764–66 (7th Cir. 2016). Cotton was not entitled to speculative discovery amounting to a "fishing expedition." *See Helping Hand Caregivers*, 900 F.3d at 890. She has not explained what "facts essential to justify [her] opposition" to summary judgment she hoped to find in the College's finance, personnel, and operations records and her EEOC file, both of which, she says, she did not have. *See* FED. R. CIV. P. 56(d). Moreover, Cotton has not explained why they are now unavailable when she acknowledges that she previously had access to them. *See id*. Last, the magistrate judge gave the parties a final three-week extension to complete discovery, and Cotton did not attempt to take any discovery during that time, so it is unclear whether Cotton would have tried to make use of even more time.

AFFIRMED